Argued July 11, affirmed November 29, 1974

# O'RORKE, *Appellant, v.* JOHN DAY, OREGON, LODGE #1824 ET AL, *Respondents.*

528 P2d 1030

*David R. Dierdorff,* Bend, argued the cause and filed a brief for appellant.

*Wendell Gronso,* Burns, argued the cause and filed a brief for respondent Stanley Stout.

*Owen M. Panner,* Bend, argued the cause for respondent John Day, Oregon, Lodge #1824 of the Benevolent and Protective Order of Elks of the United States of America. With him on the brief were C. Montee Kennedy, and Panner, Johnson, Marceau & Karnopp, Bend.

Before O'CONNELL, Chief Justice, and DENECKE,* HOLMAN, TONGUE, and BRYSON, Justices.

BRYSON, J.

This is an action under the "Dram Shop" statute, ORS 30.730,[1] by plaintiff for the recovery of damages

---

* Denecke, J., did not participate in this decision.

[1] ORS 30.730 provides:

"Any person who shall bargain, sell, exchange or give to any intoxicated person or habitual drunkard spirituous, vinous,

for the death of her spouse. The jury returned a verdict in favor of defendants. Plaintiff appeals.

John Peter O'Rorke, the deceased, was discovered dead in a motel room on March 7, 1971. His blood-alcohol level was .30 percent grams per hundred milliliters. This high alcohol level was the major contributing factor of his death.

The following events occurred prior to O'Rorke's death. On Friday, March 5, 1971, at about 5 p.m., the deceased purchased two bottles of beer at Austin Junction while on his way to John Day, Oregon. He arrived at John Day at about 6 p.m. and went to Kohtam's garage and saw shop to repair his power saw and the taillight on his truck. Mr. Kohtam testified that there was nothing unusual about the deceased's appearance or any reason to believe that the deceased had been drinking. He also testified:

"Q Was, was Mr. O'Rorke sober when he wrote this check, [at Kohtam's garage] do you recall?
"A I, I don't recall, really."

The deceased left the garage an hour later.

At about 8 p.m. the deceased was observed on the premises of the defendant Elks Club. The regular bartender at the Elks Club testified that he sold five regular one-ounce drinks to the deceased and that while at the bar, the deceased fell or slipped off a bar stool after returning from the restroom. However, the bartender did not believe the deceased was

malt or intoxicating liquors shall be liable for all damage resulting in whole or in part therefrom, in an action brought by the wife, husband, parent or child of such intoxicated person or habitual drunkard. The act of any agent or employe shall be deemed the act of his principal or employer for the purposes of this section."

intoxicated at the time he fell off the stool. Several witnesses testified that the deceased did not appear to be intoxicated when they saw him at the Elks Club between 8 and 8:30 p.m.

At about 9 p.m. the defendant Stanley Stout relieved the regular bartender for a period of ten to fifteen minutes. While tending bar, the defendant Stout purchased one drink for the deceased. The defendant Stout testified that the deceased was not under the influence of alcohol at that time. Thirty to forty-five minutes after the regular bartender had returned, the deceased was observed slumped over the bar and appeared to be intoxicated. The defendant Stout also noted that the deceased's behavior had changed significantly since he, Stout, had left the bar.

Between 10 and 10:30 p.m. the deceased was carried out of the Elks Club and registered at the John Day Motor Lodge. The deceased was carried to his room and laid on the bed. Two days later, on Sunday, March 7, 1971, the deceased was discovered dead, lying on the bed in the same clothing and in nearly the same position as he had been placed in on Friday night. An empty pint bottle of Old Crow whiskey[2] was found in a dresser in the deceased's motel room. Witnesses testified that the deceased did not have a bottle of whiskey on his person nor had they seen a bottle of whiskey in the motel room when the deceased was carried to the motel room and laid on the bed. Also, the defendant Stout testified that a blanket which was found draped over a chair in the motel room on Sunday, March 7, 1971, was not there

[2] The parties stipulated that this particular brand of whiskey could not be purchased through an Oregon Liquor Control store.

when the deceased was left in the motel room on Friday night.

The deceased weighed 180 pounds and had eaten within four to six hours of his death. The time of death was estimated as sometime between Friday night and 10 p.m. Saturday. The pathologist who performed the autopsy testified that under the facts, anywhere from sixteen to twenty-five ounces of alcohol was required to produce the .30 level of alcohol in the deceased's blood.

Plaintiff assigns as error (1) the trial court's failure to properly instruct the jury on issues of causation and proof; and (2) the trial court's striking of plaintiff's loss of counsel, companionship and consortium as a proper element of damages.

The trial court instructed the jury in the statutory language of ORS 30.730 and then instructed:

> "Under the law, it is necessary for the plaintiff to prove the following matters by a preponderance of the evidence before you may consider the question of her damages: First, that the death of John Peter O'Rorke was caused by alcoholic beverage sold or given to him by the defendants at a time when he was intoxicated. And, second, that as a consequence of her husband's death, the plaintiff has been deprived of her husband's support, care, and services.

> "If you find from the evidence that John Peter O'Rorke was not in an intoxicated condition at the time of the sale or gift, if any, of alcoholic liquor to John Peter O'Rorke, then your verdict must be for the defendants.

> "You are instructed that where the statute refers to 'all damage resulting in whole or in part therefrom,' this means any damage caused by the

sale or gift of alcoholic beverages as I will define the term 'caused' for you.

"Intoxication as that term is used in this case means 'under the influence of strong drink.' One may be said to be under the influence of strong drink when he is to any extent affected by it, but the condition may be so slight as not to impair any mental or physical faculty. Intoxication is a stronger term and is used synonymously with drunkenness, and is evidenced by undue and abnormal displays of passion or feelings.

"Concerning each defendant, you must determine whether that defendant's acts caused the damage alleged in plaintiff's Complaint. Causation or cause as I have just used the term means 'a cause which, in a direct, unbroken sequence produces the damage complained of, and without which, the damage would not have occurred.' To be a cause of such damage, [if] any, the acts complained of must be a substantial factor in bringing about the alleged harm. The cause of damages as I have used that term need not be the only cause. To the contrary, many factors or the conduct of two or more persons may operate concurrently, either independently or together, to cause an injury. And, in such case each may be a cause of the damage even though other factors or conduct would of themselves would [sic] have been sufficient to cause the same damage."

In support of her first assignment of error, plaintiff contends that she was only required to prove (1) that defendants sold or gave intoxicating liquor to the deceased at a time when the deceased was intoxicated and (2) that the deceased's death was caused by intoxication. The gravamen of plaintiff's appeal is stated in her brief as follows:

"* * * It is not the sale or gift that must cause the harm. The statute clearly talks about harm arising out of intoxication and makes liable those

who contribute to that intoxication by providing liquor to a person while intoxicated."

Therefore, plaintiff contends, the trial court committed error in failing to instruct the jury as requested: (1) that plaintiff was required to prove "that the death of John Peter O'Rorke was caused, or contributed to,[9] by alcoholic beverage sold or given to him by the defendants at a time when he was intoxicated;" and (2) that "[a]lthough plaintiff must prove by a preponderance of the evidence that intoxication was the proximate cause of John Peter O'Rorke's death, she need not prove that the particular alcoholic liquor served by defendants was the cause of death."

Defendants contend that the trial court properly instructed the jury and that plaintiff is required to prove that defendants' act of selling or giving liquor to the deceased was the cause of plaintiff's damages (the death of the deceased).

■ Plaintiff is correct in stating that she need not prove that the particular liquor served by defendants was the sole cause of death. The trial court so instructed the jury. If we follow plaintiff's arguments correctly, she interprets ORS 30.730 to require: (1) proof that defendants contributed to the intoxication of the deceased by selling or giving him liquor while the deceased was intoxicated; and (2) proof that intoxication was the cause of death. Under plaintiff's theory, a defendant who served so much as a single drop of alcohol to an intoxicated person would be

---

[9] But for the deletion of the phrase "or contribute to," the trial court instructed the jury as requested by plaintiff. As noted earlier, the court instructed the jury that defendants' acts need not have been the sole cause of death. The plaintiff did not designate her requested instructions as part of the record and they are not in the trial file or transcript.

liable in damages if that person died from excessive intoxication because the defendant contributed, regardless of degree, toward the fatal intoxication. We cannot agree that this is a proper interpretation of the statute.

■ ORS 30.730 is clear and unambiguous. It imposes liability upon defendants for *all damages which result from,* in whole or in part, *the sale or gift of intoxicating liquor to an intoxicated person.* There must be proof of the causal relationship between defendants' conduct and plaintiff's injuries in order to establish defendants' liability.[④] *See generally,* Annot., 65 ALR2d 923, § 5 (1959); Annot., 64 ALR2d 705, § 8 (1959); 45 Am Jur 2d, Intoxicating Liquors §§ 561 *et seq.*

In *Watson v. Ristow,* 42 Mich App 318, 321, 201 NW2d 289 (1972), that court held:

> "It is well settled that to recover under the 'dramshop act' the plaintiff must prove that there was a causal connection between the unlawful sale to the intoxicated person and the plaintiff's injuries. See *Wyatt v. Chosay,* 330 Mich 661, 668, 669 (1951); *Bryant v. Athans,* 362 Mich 17, 18 (1960); *Davis v. Terrien,* 364 Mich 82, 83 (1961). [Other citations omitted.]"

To the same effect, in *Trail v. Village of Elk River,* 286 Minn 380, 389, 175 NW2d 916, 921 (1970) (an

---

[④] This is the same conclusion reached by plaintiff at trial. In her exception to the trial court's instructions, plaintiff states:

"\* \* \* The law there is a statutory strict liability situation, provides liability for damages *which arise* in whole or in part from the, *from the illegal act of selling to an intoxicated person,* \* \* \* ." (Emphasis supplied.)

However, on appeal plaintiff attempts to set forth a contrary theory of liability wholly inconsistent with this statement.

action to recover for an illegal sale of liquor to an intoxicated person), that court held:

"To recover, plaintiff must show that there was a causal connection between the illegal sale and the infliction of injuries. * * *"

Whether there was a causal connection between defendants' sale or gift of intoxicating liquor to deceased while he was an intoxicated person and plaintiff's damages (deceased's death) is normally a question for the jury. We conclude that the trial court did not commit error in instructing the jury. *Storla v. S., P. & S. Trans. Co.*, 136 Or 315, 326, 330, 297 P 367, 298 P 1065 (1931). Furthermore, the requested instructions, taken in context of plaintiff's present interpretation of ORS 30.730, would have been incorrect statements of the law.

Since the jury, under proper instructions from the trial court, found that defendants were not liable, the issue of damages is moot and we reserve discussion of loss of consortium as an element of damages under ORS 30.730.

Affirmed.