Argued and submitted November 7, 1984, affirmed February 20, 1985

CHARTRAND,
*Petitioner on review,*

*v.*

COOS BAY TAVERN, INC., dba
The Sportsman Lounge,
*Respondent on review.*

(82-1680; CA A29055; SC S30975)

696 P2d 513

Michael O. Whitty, of Thom, Gant & Whitty, Coos Bay, argued the cause and filed the petition for petitioner on review.

Lynne W. McNutt, of McNutt, McNutt & Thrush, Coos Bay, argued the cause for respondent on review.

JONES, J.

**JONES, J.**

This is an action for damages for personal injuries brought by plaintiff against a tavern owner who is alleged to have served alcoholic liquor to a customer of the tavern after the customer was visibly intoxicated. A jury found that the customer of the tavern left the tavern and negligently drove her vehicle onto the wrong side of the road and into a head-on collision with the plaintiff, causing serious personal injuries. The jury returned an award in favor of the plaintiff and against the defendant in the sum of $108,407.12. The defendant appealed the judgment against it and the Court of Appeals reversed. We affirm the Court of Appeals.

The essence of plaintiff's complaint was that defendant

(1)  sold alcoholic beverages to its customer, Elizabeth Coonse,

(2)  after she became visibly under the influence of intoxicating liquor

(3)  when defendant knew or should have known that she would leave the premises by operating a motor vehicle, all of which

(4)  constituted an unreasonable hazard of risk and harm to other persons on the public highway.

The trial court instructed the jury that "by statute, it is the law of Oregon that no person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated. Anyone who violates this statute is negligent." The defendant contends the instruction was erroneous. The defendant's position was that the court should have instructed the jury that the plaintiff must also prove that defendant knew or should have known that the driver would leave the premises by operating a motor vehicle.[1] We granted

---

[1] The defendant's requested instruction to the court reads:

"BEFORE the Plaintiff can recover damages from the Defendant in this case, Plaintiff must prove:

"That Defendant served intoxicating liquor to ELIZABETH LEE COONSE after COONSE was visibly intoxicated;

"And that Defendant knew or should have known that COONSE would leave

review to evaluate the propriety of giving this instruction.

The Court of Appeals, after noting that the instruction is in the language of ORS 471.410(1),[2] held that the instruction was erroneous because the case was pled as a common-law negligence claim and the instruction did not inform the jury that the plaintiff must prove that it was reasonably foreseeable to defendant that its customer, on leaving the tavern, would drive a car.

In *Campbell v. Carpenter,* 279 Or 237, 243, 566 P2d 893 (1979), Justice Tongue, in discussing a similar issue, wrote that the trier of fact (in that case the judge) could have properly found from the evidence that at the time of serving drinks to the customer the tavern owner had reason to know that upon leaving the tavern the customer would probably drive away in her automobile. In *Campbell,* this court approved the following language from *Rappaport v. Nichols,* 31 NJ 188, 8-9, 156 A2d 1, 75 ALR2d 821 (1959):

> "When alcoholic beverages are sold by a tavern keeper * * * to an intoxicated person, the unreasonable risk of harm not only to * * * the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent. * * *"

Justice Tongue added:

> "* * * It is also our opinion that the trial judge, in making that finding, could properly take notice of the fact that 'in current times * * * traveling by car to and from the tavern is so commonplace' (as also observed in *Rappaport v. Nichols, supra,* at 8) and that this includes visits to taverns by single women." 279 Or at 243.

The *Campbell* opinion concluded:

---

the premises by operating a motor vehicle;

"And such would constitute an unreasonable risk of harm to other persons on the public highway.

"* * * * *" (Emphasis added.)

[2] ORS 471.410(1) provides:

"No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

"Under the rule of *Rappaport,* however, which we now adopt for application in such cases, a tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time *it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile.* As previously stated, we believe that there was sufficient evidence to support a finding in this case that at the time of serving the drinks to Mrs. Pierce, it was reasonably foreseeable to the defendants Carpenter that when she left the tavern she would be the driver of her own car, rather than that her estranged husband would be the driver." 279 Or at 243-44 (emphasis added).

In quoting the language from *Rappaport,* this court, in *Campbell,* took judicial notice of the fact that in current times traveling by car to and from a tavern is commonplace and car accidents resulting from drinking are frequent. These facts were judicially noticed for the purpose of determining what the common law of this jurisdiction is or ought to be. In other words, we took judicial notice of these facts for the purpose of determining whether under the common law of this state a tavern owner may be sued on a theory of common law negligence in selling alcoholic liquor to a customer who is visibly intoxicated when it was known or should have been known that the customer would leave the premises and operate a vehicle. This has sometimes been described as judicial notice of a "legislative fact." The commentary to OEC 201(a), which was adopted from the commentary to Federal Rule of Evidence 201(a), reads:

"* * * Adjudicative facts are simply the facts of the particular case. Legislative facts * * * are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body. The terminology was coined by Professor Kenneth Davis in his article 'An Approach to Problems of Evidence in the Administrative Process,' in 55 Harv L Rev 364, 404-407 (1942). * * *

"The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite.

"Legislative facts are quite different. As Professor Davis says:

" 'My opinion is that judge-made law would stop growing if judges, in thinking about questions of law and policy, were forbidden to take into account the facts they believe, as distinguished from facts which are 'clearly . . . within the domain of the indisputable.' Facts most needed in thinking about difficult problems of law and policy have a way of being outside the domain of the clearly indisputable.' "

In *Campbell* we also took judicial notice of the same fact (that in current times travel by car to and from a tavern is commonplace and that this includes visits to taverns by single women), but for a different purpose. This fact was noticed for the purpose of determining whether the evidence in *Campbell* was sufficient to satisfy the element of the tort that the tavern owner knew or should have known that the customer would leave the premises and operate a motor vehicle. In these situations, the fact noticed was neither an adjudicative nor legislative one in the pure sense. It was rather the kind of general proposition used in drawing conclusions from the evidence, of the type discussed in the commentary to OEC 201.[3] It is not an adjudicative fact that would be governed by OEC 201, and it is not the type of fact the jury would ever be told about.

■      In determining the appropriateness of a court's action in taking judicial notice, it must constantly be borne in mind that judicial notice may be employed for a wide variety of purposes. A failure to distinguish between the purposes for which courts take judicial notice of fact creates the danger that someone will assume that once an appellate court has at one time or another taken judicial notice of a fact for one purpose it is a proper subject for notice for a completely different purpose. In *Campbell,* when we took judicial notice of

---

3

"* * * While judges take judicial notice of 'propositions of generalized knowledge' in a variety of situations—for example, when they determine the validity and meaning of statutes, or formulate common law rules, or decide whether evidence should be admitted, or assess the sufficiency and effect of evidence—these operations are all essentially nonadjudicative in nature. * * * The Legislative Assembly does not believe that judges now instruct juries as to 'propositions of generalized knowledge' derived from encyclopedias or other sources, or that they are likely to do so, or, indeed, that it is desirable that they do so." Legislative Commentary to OEC 201.

the facts discussed above, we did not remove from the definition of negligence the "knew or should have known" element; nor did we suggest by our language that the "knew or should have known" element need not be proved at all but may be supplied by judicial notice. The facts that in current times traveling by car to and from a tavern is commonplace and car accidents resulting from drinking are frequent are not the type of indisputable facts that qualify for judicial notice under OEC 201. Judicial notice cannot replace the need for proof of an essential element of the tort claim as alleged in this case, *i.e.,* proof that the defendant knew or should have known that the customer would drive a vehicle from the tavern.

The Court of Appeals was correct in deciding that the instruction as given was erroneous.

■■■ Because this case was pled and tried under theories of common law negligence and negligence per se for violation of ORS 471.410(1), the instruction by the court was erroneous for failing to instruct the jury on the foreseeability issue, and the case must be reversed and remanded for a new trial. However, as discussed in argument in this case in response to one of the court's written questions, there was no need for the plaintiff to so restrict the claim. The plaintiff could and may after proper amendments claim damages on a theory of tort law unfettered by negligence concepts of foreseeability. In fact, the plaintiff could proceed on three theories:[4]

(1) common law negligence without reference to any statute as recognized in *Campbell v. Carpenter, supra;*

(2) negligence proved as a matter of law by violation of Oregon Liquor Control Act Chapter 471, as recognized in *Davis v. Billy's Con-Teena,* 284 Or 351, 587 P2d 75 (1977); and

(3) statutory tort as recognized in *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983), in this case based on ORS 30.950:

---

[4] *See also Shahtout v. Emco Garbage Co.,* 298 Or 598, 695 P2d 897 (1985).

Other states recognize one or more of these three separate theories. *See* Smith, *Recent Decisions,* 14 Cumberland L Rev 411, 415 (1984), and the cases cited therein:

"* * * Violation of alcoholic beverage control laws was viewed in various ways: strict liability may be imposed for violating the statute, the violation may be negligence per se, and the violations may be only evidence of negligence."

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

As we said in *Nearing v. Weaver,* 295 Or at 709, the risk and the potential harm to the plaintiff have already been foreseen by the lawmaker. The legislature by stating, or implying in reverse language, that a tavern owner will be held liable for the acts of a person who has been served alcoholic liquor while visibly intoxicated, resolved the foreseeability issue as a matter of law. Thus, a plaintiff protected by such a statute need not resort to any concepts of negligence. Negligence is irrelevant. The sole question is whether the defendant engaged in acts prohibited by the statute and whether the violation of the statute resulted in injury.[5]

Unlike the statute in *Nearing,* which did not provide a specific remedy, the statute applicable to this case does.

ORS 30.950 was enacted by the 1979 Legislative Assembly as Oregon Laws 1979, chapter 801, which repealed and replaced ORS 30.730, the Oregon Dram Shop Act. The Dram Shop Act allowed the spouse, parent or child of any intoxicated person or habitual drunkard to sue servers of alcoholic beverages for damages. Chapter 801 expanded the liability of commercial hosts beyond the caselaw limits of *Campbell v. Carpenter, supra,* and *Davis v. Billy's Con-Teena, supra.* A commentator noted that:

"* * * Ironically, the legislation was backed by Oregon commercial hosts who were seeking to reduce their judicially imposed liability to persons injured by intoxicated and minor

---

[5] *See* Comment, *Liquor Vendor Liability for Torts of Intoxicated Patrons,* 12 U Balt L Rev 139, 142 (1982):

"The effect of dram shop legislation is to impose a degree of strict liability upon the bar owner. [W. Prosser, The Law of Torts § 81, at 538 (4th ed. 1971).] The common law rule of proximate cause is statutorily altered to focus upon the vendor's sale, rather than the consumer's act of drinking the liquor. [Healy v. Cady, 104 Vt. 463, 466, 161 A. 151, 152 (1932).] Such legislation, therefore, frees the injured party from the requirement of establishing negligence or fault on the part of the tavern owner. [*See* Appleman, *Pleading, Evidence, and Procedure Under the Dram Shop Act,* 1958 U. Ill. L.F. 219, 234-45.] Similarly, the victim is not faced with overcoming the common law presumption of lack of foreseeability by the bar owner before civil liability can be imposed. [*Id.* at 236.]" (Text of footnotes in brackets.)

patrons. Commercial hosts were concerned about the rising cost and difficulty of obtaining liability insurance in Oregon after the *Davis* decision. They argued that the court's negligence per se holding in *Davis* went beyond the legislative intent of the statute that prohibits commercial hosts from serving minors.

"Lobbyists for the commercial hosts introduced the original version of Chapter 801 as H.B. 3152. The bill sharply limited host liability so that, in most instances, minor or intoxicated guests would be held solely responsible for their own acts and resulting injuries. * * *

"Under proposed HB 3152, a plaintiff seeking to recover for injuries caused or incurred by an intoxicated person would have been required to show that the host had served a visibly intoxicated guest and that the host had been grossly negligent in serving the guest.

"* * * After numerous amendments by the House Judiciary Committee, the bill lost its liability reducing impact, yet retained the support of commercial host lobbyists." Comment, *Review of Oregon Legislation,* 16 Willamette L Rev 191, 192-93 (1979).

After the bill was amended by the House Judiciary Committee, the purpose of the bill changed from restricting liability to expanding liability to third persons, but not to the person served. *See, Sager v. McClenden,* 296 Or 33, 39, 672 P2d 697 (1983). Deletion of the gross negligence standard left the final version of the bill with two sections that provide for host liability for all damages caused or incurred off-premises by an intoxicated person who, while visibly intoxicated, was served alcoholic beverages by a commercial or social host, with no reference to proof of any form of negligence. The risk, the harm and the potential plaintiff were all foreseen by the lawmaker.

We now turn to the second issue in this case.

During plaintiff's case-in-chief, a forensic scientist specializing in the field of criminalistics employed by the Department of State Police related to the jury the blood alcohol test results which revealed the driver had a blood alcohol level at the time of her last drink "between .18 and .24." He then testified on direct examination:

> "Q. Officer, from your experience, is there a standard that is used to determine when a person is under the influence of alcohol?
>
> "A. The State of Oregon has defined that by law."

Defendant objected to the question "as having no bearing in case, not a question for us." The objection was overruled,[6] and the officer continued:

> "Q. Officer, what is the standard in Oregon for being under the influence?
>
> "A. Oregon state law says that you are under the influence if your blood alcohol level is over .10 percent."

The officer then compared the .10 standard to .00 if a person had no alcohol and to the driver's .18 to .24 percentage of blood alcohol at the time she had her last drink, stating to the jury that her blood alcohol level was twice the legal standard for being under the influence. Another criminalist then testified that a person usually manifests signs of visible intoxication at the .13 blood alcohol level.

The trial court later instructed the jury as follows:

> "Before the plaintiff can recover damages from the defendant, the plaintiff must prove that the defendant served intoxicating liquor to Elizabeth Coonse at a time when Elizabeth Coonse was visibly intoxicated.
>
> " 'Visibly' means that which can be perceived by the eye or observed by the mind; that which is evident or manifest.
>
> "In addition to the meaning of 'intoxicated' as it is normally understood, the dictionary defines 'to intoxicate' as to make drunk or to inebriate.
>
> "Oregon statutes provide a person whose blood contains more than .10 by weight of alcohol is under the influence of intoxicating liquor.
>
> "A person, when drunk or intoxicated as those terms are commonly understood, is under the influence of intoxicating liquor, but a person may be under the influence of intoxicating liquor and not be intoxicated or drunk."

---

[6] The objection could have been sustained because the question called upon the officer to tell the jury about law instead of fact, but because the objection "was in general terms, if overruled, cannot avail the objector on appeal." *Smith v. Oregon Agricultural Truck.,* 272 Or 156, 160, 535 P2d 1371, 1373 (1975).

Defendant contends that the officer's testimony concerning the legal standard for being under the influence of intoxicants was irrelevant and the instruction telling the jury that a person whose blood contains more than .10 percent by weight of alcohol is under the influence of intoxicating liquor was improper.

The Court of Appeals held that the testimony was irrelevant and the instruction erroneous. The Court of Appeals said:

"* * * The officer's testimony concerning the blood alcohol standard for being under the influence of intoxicating liquor was never tied to the principal element of the alleged negligence in this case, i.e., serving alcohol to a 'visibly' intoxicated person. The testimony is not relevant. A similar difficulty is presented by the instruction. The instruction that plaintiff must prove that defendant served its customer when she was 'visibly intoxicated,' followed by the instruction objected to that 'a person whose blood alcohol content is more than .10 percent is under the influence of intoxicating liquor,' confuses two unrelated standards, and the latter is not the standard for civil liability in this action. Together, the instructions are confusing and misleading. It was error to admit the officer's testimony and to give the instruction." 68 Or App at 883-84 (footnote omitted.)

We agree.

ORS 487.540(1)(a) provided:[7]

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .10 percent or more by weight of alochol in the blood of the person as shown by chemical analysis of the breath or blood of the person * * *."

The purpose of the statute was to make it a crime for a person to operate an automobile with more than a .10 (now .08) blood alcohol level irrespective of whether that person would be considered under the influence as this court has defined that term. We have stated that a person is under the influence of intoxicating liquor when he or she has consumed enough

---

[7] This statute and ORS 487.545 were amended to lower the blood alcohol level standard to .08. Or Laws 1983, ch 722, §§ 1, 2.

liquor to adversely affect that person's mental or physical faculties to some noticeable or perceptible degree. *See, State v. Robinson,* 235 Or 524, 385 P2d 754 (1963).

ORS 487.545 provided:

"(1)    At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants, if the amount of alcohol in the person's blood at the time alleged is less than .10 percent by weight of alcohol as shown by chemical analysis of the person's breath, blood or urine, it is indirect evidence that may be used with other evidence, if any, to determine whether or not the person was then under the influence of intoxicants.

"(2)    Not less than .10 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicants."

This statute specified that the standard may be used in civil cases. It applied to "the trial of any civil * * * action * * * arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicants." However, that statute specified that a blood alcohol level *below* .10 (now .08) provides indirect evidence whether or not the driver was under the influence of intoxicants, which is not the issue in this case. The uncontroverted evidence was that the driver had at least a .18 blood alcohol level at the time she was last served intoxicants at the defendant tavern. There was no contention by anyone that her blood alcohol level was ever below .10 when she consumed her last drink. If this evidence concerning the .18 blood alcohol level was believed by the jury, then, by statute, Coonse was "under the influence." But the issue in this case is whether she was visibly intoxicated when served, not whether she was under the influence of intoxicants.

There is no question that a person who is visibly intoxicated must necessarily be under the influence of intoxicants[8] and that being "under the influence" is a step toward becoming intoxicated. However, the fact that the state legislature has adopted a certain percentage of alcohol in the blood as legally constituting being under the influence of intoxicants

[8] Under the influence of "intoxicants" includes intoxicating liquor and controlled substances. *See* ORS 487.540(1).

is not relevant circumstantial evidence that the driver was visibly intoxicated. The legal standard does not prove that fact, nor *tend* to prove that fact. A legal standard is not evidence of a fact.[9] *See, Shahtout v. Emco Garbage Co.,* 298 Or 598, 605, 695 P2d 897 (1985).

Evidence that a patron was observed to be under the influence of liquor when last served is relevant evidence of intoxication. Evidence that the driver spent four or five hours at defendant's tavern, consuming 10 or 12 beers, was spilling her drinks, confessed she was obviously drunk when she left the tavern, then drove erratically, forcing other vehicles off the road and colliding head-on with plaintiff's vehicle on the wrong side of the road, all tended to prove she was visibly intoxicated when last served liquor at the tavern. The evidence that revealed the driver had between a .18 to .24 blood alcohol percentage at the time she was last served liquor by defendant was also relevant as was the expert's opinion that a person usually shows signs of visible intoxication at the .13 blood alcohol level. Observations of the patron's condition do not create the mischief here. It is the legal standard that is irrelevant and confusing, especially when singled out for a special instruction. The reference to the legal standard of

---

[9] Relevant evidence is defined by OEC 401, which provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The rule is identical to Rule 401 of the Federal Rules of Evidence. In adopting it, the Legislative Assembly also approved the following commentary to the federal rule:

"Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Does the item of evidence tend to prove the matters sought to be proved? Whether the relationship exists depends upon principles evolved by experience or science, applied logically to the situation at hand. James, 'Relevancy, Probability and the Law,' 20 Cal L Rev 689, 696 n 15 (1941), in *Selected Writings on Evidence and Trial* 610, 615 n 15 (Fryer ed 1957). The rule summarizes this relationship between an item of evidence and a matter properly provable in a case as a 'tendency to make the existence' of the fact to be proved 'more probable or less probable.' * * *

"The standard of probability under the rule is 'more * * * probable than it would be without the evidence.' Any more stringent requirement is unworkable and unrealistic. As McCormick section 185 at 436 says, 'A brick is not a wall,' or, as Falknor, 'Extrinsic Policies Affecting Admissibility,' in 10 Rutgers L Rev 574, 576 (1956), quotes Professor McBaine, '* * * [I]t is not to be supposed that every witness can make a home run.' * * *"

what blood alcohol level constitutes being "under the influence," combined with testimony that the driver had twice the legal standard, was confusing and not helpful to a jury charged with deciding whether the driver appeared visibly intoxicated to the bartender at the time the bartender served her alcoholic beverages.

The Court of Appeals is affirmed.