Argued and submitted November 3, 1987, decision of the Court of Appeals affirmed, trial court reversed in part and remanded to trial court for further proceedings June 7, 1988

## GATTMAN,
*Respondent on Review,*

*v.*

## FAVRO et al,
*Defendants,*

*and*

## BORRELLI ENTERPRISES, INC.,
*Petitioner on Review.*

(TC A8309-05921; CA A37387; SC S34317)

757 P2d 402

Peter R. Chamberlain, Bodyfelt, Mount, Stroup & Chamberlain, Portland, argued the cause and filed the petition for petitioner on review.

Wayne Mackeson, Des Connall and Dan Lorenz, P.C., Portland, argued the cause and filed a response for respondent on review.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

PETERSON, C. J.

## PETERSON, C. J.

On April 1, 1983, ORS 30.950 provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."[1]

The plaintiff's complaint alleges that the defendant Borrelli Enterprises, Inc., operates a restaurant and lounge, and that it served alcoholic beverages to the co-defendant Favro when Favro was visibly intoxicated. Favro allegedly left the defendant's premises and later stabbed the plaintiff. The only question presented by the defendant's[2] petition for review is whether ORS 30.950 provides a remedy to the plaintiff.

The plaintiff's complaint against the defendant contains these negligence allegations:

"VI

"At all times material herein, defendant Borrelli Enterprises, Inc., was a California corporation authorized to do business in Oregon under the assumed business name 'Red Baron Steak House at Troutdale' and operating a lounge at the Troutdale airport.

"* * * * *

"VIII

[In this paragraph, the plaintiff alleged that he was stabbed by Favro, causing injury.]

"* * * * *

---

[1] Oregon Laws 1987, chapter 774, section 13, amended ORS 30.950 to read:

"No licensee, permittee or social host is liable for damages incurred or caused by intoxicated patrons or guests off the licensee, permittee or social host's premises unless:

"(1) The licensee, permittee or social host has served or provided the patron alcoholic beverages to the patron or guest, while the patron or guest was visibly intoxicated; and

"(2) The plaintiff proves by clear and convincing evidence that the patron or guest was served alcoholic beverages while visibly intoxicated."

[2] Favro and two other taverns also were named as defendants in this case. The only defendant whose liability we are concerned with in this opinion is the defendant Borelli Enterprises, Inc., which will be referred to in this opinion as "the defendant."

"X

"The injuries as aforesaid were foreseeably caused by the negligence of defendant Borrelli Enterprises, Inc., knowing or having reason to know of the increased risk of harm presented to the public by patrons who consume alcohol, particularly those who drink to excess or while visibly intoxicated, in one or more of the following particulars:

"1.   In serving alcoholic beverages to defendant Favro when defendant Favro was visibly intoxicated;

"2.   In serving defendant Favro intoxicating liquors while knowing or having reason to know of the violent propensities of defendant Favro;

"3.   In continuing to serve alcoholic beverages to defendant Favro while knowing or having reason to know of the increased violent propensities of defendant Favro when drinking.

"4.   In admitting defendant Favro to the premises or allowing him to remain upon the licensed premises when defendant Favro was visibly intoxicated in violation of ORS 471.410(1).

"5.   In failing to emphasize to its employees the rules and statutes of the State of Oregon which require that they not serve a visibly intoxicated person."

In a separate claim for relief, the plaintiff alleged:

"The injuries as aforesaid were directly and proximately caused by defendant Borelli Enterprises' violation of ORS 30.950 in that defendant Borelli Enterprises served or provided defendant Favro alcoholic beverages while defendant Favro was visibly intoxicated. Defendant Borelli Enterprises is strictly liable for said damages and injuries pursuant to said statute."

Defendant moved for dismissal "on the ground that plaintiff fails to allege facts sufficient to constitute a claim." ORCP 21A.(8). The motion was granted, the trial court entered judgment against the plaintiff in favor of defendant, and made the judgment appealable under ORCP 67B. The Court of Appeals reversed, holding that the plaintiff's complaint stated claims for relief under common-law negligence, and negligence per se under ORS chapter 471, and on a statutory tort theory based on ORS 30.950. *Gattman v. Favro,* 86 Or App 227, 739 P2d 572 (1987).

■      The defendant petitioned for review, asserting that the Court of Appeals erred in holding that a claim for relief was stated under ORS 30.950. The defendant does not seek reversal of the Court of Appeals' rulings on common-law negligence and negligence per se.[3] We disapprove the Court of Appeals' holding on the statutory tort issue.

■■      The question in a statutory tort context (as it was in *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983)) is whether the plaintiff has "pleaded an infringement by [the defendant] of a legal right arising independent of the ordinary tort elements of a negligence action." *Nearing v. Weaver,* 295 Or at 707. One significant difference between a statutory tort remedy and a common-law right of action is that if a statutory tort is created, foreseeability may be immaterial or has been determined by the legislature. *See Chartrand v. Coos Bay Tavern,* 298 Or 689, 695, 696 P2d 513 (1985), discussed below. ("The plaintiff [on remand] could and may after proper amendments claim damages on a theory of tort law unfettered by negligence concepts of foreseeability.")

In deciding whether a "statutory tort"[4] exists because

---

[3] Strictly speaking, the doctrine of "negligence per se" does not create a cause of action. Rather, it refers to a standard of care that a law imposes within a cause of action for negligence. As we stated in *Shahtout v. Emco Garbage Co.,* 298 Or 598, 601, 695 P2d 897 (1985):

"Of course, a plaintiff may assert both statutory and common-law theories of liability on the same facts. *See Nearing v. Weaver, supra,* 295 Or at 708, 670 P2d at 141. In a negligence case, the plaintiff must show that defendant did not meet an applicable standard of due care under the circumstances. When a plaintiff (or a defendant seeking to prove negligence on plaintiff's part) invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law. This court long has held that violations of statutory safety rules by themselves provide the element of negligence with respect to those risks that the rules are meant to prevent, at least unless the violator shows that his conduct in fact did not violate the rule under the circumstances. *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972); *Peterson v. Standard Oil Co.,* 55 Or 511, 106 P 337 (1910)." (Footnote omitted).

Professor Forell criticizes the use of the term "negligence per se," to describe "situations where a statutory violation in some way affects a common-law action for negligence." Forell, *The Interrelationships of Statutes and Tort Actions,* 66 Or L Rev 219, 220-21 (1987).

[4] We use quotation marks around the words "statutory tort," a term that first appeared in *Chartrand v. Coos Bay Tavern,* 298 Or 689, 695, 696 P2d 513 (1985). Statutory libability need not be characterized as a "tort." *See, e.g., Garrow v. Pennsylvania Ins. Co.,* 288 Or 215, 220, 603 P2d 1175 (1979) (Insurer's liability arises from failure of insurer to include in its policy a provision required by insurance code.)

of the enactment of ORS 30.950, we first examine our recent decisions — decisions that precipitated the enactment of ORS 30.950 — involving the liability of liquor licensees and others for serving intoxicated persons and minors. We then discuss whether ORS 30.950 provides a statutory tort remedy in favor of the plaintiff in this case.

I

■    The predecessor to ORS 30.950 was known as the Dram Shop Act. The Dram Shop Act, originally passed in 1913, provided:

> "Any person who shall bargain, sell, exchange or give to any intoxicated person or habitual drunkard spiritous, vinous, malt or other intoxicating liquors shall be liable for all damage resulting in whole or in part therefrom, in an action brought by the wife, husband, parent or child of such intoxicated person or habitual drunkard."

*Former* ORS 30.730 (*repealed by* Or Laws 1979, ch 801, § 5).[5] The predecessor statute to the 1913 legislation was first enacted in 1876 and provided criminal penalties for the same acts.[6] One writer stated: "As a result of the temperance movement in the late nineteenth century, * * * a number of states enacted legislation [the Dram Shop Acts] to control commercial liquor traffic" in an effort to minimize the inherent evils of legalized alcohol. Note, *The Minnesota Supreme Court 1962-1963,* 48 Minn L Rev 119, 126 (1963).[7]

       After the advent of automobile traffic, *former* ORS 30.730, the successor to the 1913 legislation, was applied to

---

[5] Oregon Laws 1913, chapter 51, was the original Dram Shop Act and was almost identical to the Dram Shop Act repealed in 1979.

[6] Oregon Laws 1876, p 8, section 1, provided:

> "It shall be unlawful for any person to knowingly sell, by agent or otherwise, any spiritous or other intoxicating liquor * * * to any intoxicated person, or to any person who is in the habit of becoming intoxicated; and any person violating the provisions of this section shall forfeit and pay to the school fund the sum of one hundred dollars for each and every offense, to be collected by action on his bond by any citizen of the county where such offense may have been committed."

[7] As noted in Bunyan, The Life and Death of Mr. Badman, in Life and Death of Mr. Badman and the Holy War 49-50 (1905) *cited in* Note, *The Minnesota Supreme Court 1962-1963,* 48 Minn L Rev 119, 126 (1963):

> "By Drunkeness, Men do often times shorten their dayes; goe out of the ale-houses drunk, and break their Necks before they come home. Instances not a few might be given of this, but this is so manifest, a man need say nothing."

damage actions unrelated to traffic mishaps. *See, e.g., O'Rorke v. John Day Lodge #1824,* 270 Or 533, 528 P2d 1030 (1974) (action by decedent's spouse to recover for death of decedent caused by alcohol overdose). However, the remedy under the Dram Shop Act was limited to the wife, husband, parent or child of the intoxicated person or habitual drunkard; it provided a remedy for loss of family support due to the injury or death of an intoxicated family member. The Dram Shop Act did not provide a remedy to a third party injured by an act of an intoxicated person. *Wiener v. Gamma Phi, ATO Frat.,* 258 Or 632, 638-39 n 2, 485 P2d 18 (1971).

The common law did not hold the vendor of intoxicants liable for injuries to a third person caused by an intoxicated customer of the vendor. *See, e.g., Meade v. Freeman,* 93 Idaho 389, 462 P2d 54 (1969). *See also* Note, *Torts — The Common Law Negligence Liability of Commercial Purveyors of Alcohol: Campbell v. Carpenter,* 57 Or L Rev 357, 357 n 2 (1978). In *Wiener v. Gamma Phi ATO Frat., supra,* 258 Or at 643, a negligence case, this court departed from the historical rule and held that a social host serving intoxicants may have an obligation "to refuse to serve alcohol when it would be unreasonable under the circumstances to permit him to drink." Chief Justice O'Connell explained:

> "Ordinarily, a host who makes available intoxicating liquors to an adult guest is not liable for injuries to third persons resulting from the guest's intoxication. There might be circumstances in which the host would have a duty to deny his guest further access to alcohol. This would be the case where the host 'has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things.' Such persons could include those already severely intoxicated, or those whose behavior the host knows to be unusually affected by alcohol. Also included might be young people, if their ages were such that they could be expected, by virtue of their youth alone or in connection with other circumstances, to behave in a dangerous fashion under the influence of alcohol."

*Wiener,* 258 Or at 639 (footnotes omitted).

The court also rejected the argument that the legislature, by enacting the Dram Shop Act, prescribed the sole civil remedy against persons who furnish liquor to others. The

court rejected the argument because the statute "provides a remedy for a very limited class of plaintiffs." *Id.* at 638-39 n 2.

The same year, 1971, in *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 584, 488 P2d 436 (1971), a patron of a drinking establishment sought to recover from the operator damages for personal injuries allegedly inflicted by other customers during a "barroom brawl" and sought to invoke *former* ORS 471.410(3) (now ORS 471.410(1)) as a *per se* standard of conduct for those who serve alcoholic beverages. That statute provided:

> "No person shall give or otherwise make available any alcoholic liquor to a person who is visibly intoxicated."

This court decided that this statute did not provide an appropriate standard for a negligence per se claim. The court stated:

> "The statute in question prevents making alcohol available to a person who is *already visibly intoxicated.* This makes the standard particularly inappropriate for the awarding of civil damages because of the extreme difficulty, if not impossibility, of determining whether a third party's injuries would have been caused, in any event, by the already inebriated person. Unless we are prepared to say that an alcoholic drink given after visible intoxication is the cause of a third party's injuries as a matter of law, a concept not advanced by anyone, the standard would be one almost impossible of application by a factfinder in most circumstances."

*Stachniewicz,* 259 Or at 586-87 (emphasis in original).

Eight years later this court did in part what it was unprepared to do in *Stachniewicz.* In *Campbell v. Carpenter,* 279 Or 237, 243-44, 566 P2d 893 (1979), the court applied the *Wiener* reasoning and held liable a commercial establishment that served alcohol to a visibly intoxicated person who thereafter was involved in a traffic accident that resulted in the death of the plaintiffs' decedents. The court held that an injured third party had a claim for common-law negligence against such a defendant "if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time it is reasonably foreseeable that when such a customer

leaves the tavern he or she will drive an automobile." *Id.*[8] The court avoided overruling *Stachniewicz* by stating that the "visibly intoxicated" standard was "not based on or because of ORS 471.410(3) [now ORS 471.410(1)], but as a matter of common law negligence." *Id.* at 241 n 2.

One year earlier, in *Davis v. Billy's Con-Teena, Inc.,* 284 Or 351, 587 P2d 75 (1978), the court held that a violation of another section of ORS chapter 471, ORS 471.130(1) — a liquor control statute which makes it unlawful for a licensee to sell alcoholic beverages to anyone without requiring proof of age if there is doubt whether the customer is 21 years old — is prima facie evidence of the violator's failure to conform to a standard of reasonable conduct. The court held that the statute was designed to protect the general public, as well as minors, "who may be killed or injured by inebriated minors" and therefore defined negligence "as a matter of law." 284 Or at 356, 357. The court stated that "[t]o the extent that what we said in *Stachniewicz* * * * may be construed as holding to the contrary, that portion of our decision * * * is overruled." *Id.* at 356 n 4.

By 1979 then, it was established that any person serving one who was visibly intoxicated and later drove a car might be liable *in negligence* to a third person injured in an automobile accident, as might a tavern keeper who served an underage person without requiring proof of age. Following *Campbell* and *Davis,* in 1979, the Oregon Restaurant and Beverage Association and various commercial alcoholic beverage servers sought legislation to "limit the liability of liquor licensees and permittees to third parties." *Sager v. McClenden,* 296 Or 33, 37, 672 P2d 697 (1983). The purpose of their proposal was to reduce the cost and increase the availability of liability insurance in the state. *See* Minutes, House Committee on the Judiciary (June 11, 1979) (testimony of restaurant industry lobbyists concerning high cost and limited availability of liability insurance). Their concerns initiated a legislative process

---

[8] This court subsequently recognized the inappropriateness of the foreseeability question being determined as a matter of law and stated that the plaintiff would have to prove this element as a matter of fact. *Chartrand v. Coos Bay Tavern,* 298 Or 689, 695, 696 P2d 513 (1985).

that resulted in the enactment of Oregon Laws 1979, chapter 801, codified at ORS 30.950 to 30.960.[9]

## II

We turn then to the question whether the enactment of ORS 30.950 provides a statutory tort remedy under the facts of this case. Two recent decisions mentioned above discuss that question.

In *Sager v. McClenden, supra,* we held that ORS 30.950 did not create a statutory tort action in favor of an intoxicated person who was injured in a fall after being served while visibly intoxicated. The opinion contains this extensive discussion of the legislative history:

"HB 3152, which repealed the Dram Shop Act (former ORS 30.730) and became ORS 30.950, 30.955 and 30.960, was proposed by the Oregon Restaurant and Beverage Association and supported by various commercial alcoholic beverage servers. The legislative history of ORS 30.950 indicates that its purpose was to limit the liability of liquor licensees and permittees to third parties. Commercial alcoholic beverage servers testified at hearings on HB 3152 that they were concerned about the expansion of their liability from two recent decisions of this court. The cases were *Campbell v. Carpenter,* 279

---

[9] At the time the alleged facts of this case occurred, the statutory scheme was as follows:

ORS 30.950 provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated persons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

ORS 30.955 provided:

"No private host is liable for damages incurred or caused by an intoxicated social guest unless the private host has served or provided alcoholic beverages to a social guest when such guest was visibly intoxicated."

ORS 30.960 provided:

"Notwithstanding ORS 30.950, 30.955 and 471.130, no licensee, permittee or social host shall be liable to third persons injured by or through persons not having reached 21 years of age who obtained alcoholic beverages from the licensee, permittee or social host unless it is demonstrated that a reasonable person would have determined that identification should have been requested or that the identification exhibited was altered or did not accurately describe the person to whom the alcoholic liquor was sold or served."

Oregon Laws 1987, chapter 744, section 14, repealed ORS 30.955.

Oregon Laws 1987, chapter 774, section 13, amended ORS 30.950. *See* n 1, *supra.*

Or 237, 566 P2d 893 (1977), and *Davis v. Billy's Con-Teena, Inc.,* 284 Or 351, 587 P2d 75 (1978). Commercial alcohol servers testified that the holdings in those two cases had made liability insurance much more difficult and expensive to obtain. Minutes, House Comm. on Judiciary, June 11, 1979, Tape 85, Side 2; Minutes, Senate Comm. on State and Federal Affairs and Rules, June 30, 1979, Tape 9, Side 1. Before considering further the legislative history of HB 3152, a brief discussion of these two cases is in order.

"In *Campbell,* this court held that a tavern keeper is liable to third parties who are injured in an automobile accident that results from serving a visibly intoxicated customer because it is reasonably foreseeable that when the customer leaves the premises, he or she will drive an automobile. *Campbell v. Carpenter, supra,* 279 Or at 243-44. The basis of the tavern keeper's liability is common law negligence, not violation of a statute.

"In *Davis,* this court held that the operators of two taverns, who each sold a keg of beer to minors, without requiring proof of age, were liable for the death of a third party killed in an automobile accident caused by another minor who consumed beer from both kegs. The basis of liability was negligence *per se* for violation of ORS 471.130(1), which makes it unlawful for a licensee to sell alcoholic beverages to anyone without requiring proof of age if there is doubt whether the customer is 21 years old. This statute was found to have been designed to protect the general public as well as minors. *Davis v. Billy's Con-Teena, Inc., supra,* 284 Or at 356.

"Section 1 of HB 3152, which, as modified, became ORS 30.950, was proposed to limit the holding in *Campbell.* As originally drafted, Section 1 provided that licensees would not be liable unless they were grossly negligent in serving visibly intoxicated patrons. The gross negligence standard, however, was deleted from the bill in committee. As finally approved, ORS 30.950 codified the holding in *Campbell.* The language the Court of Appeals found to create a claim for inebriated patrons is part of the original language proposed by the Oregon Restaurant and Beverage Association to limit their liability to third parties.

"Section 3 of HB 3152, which became ORS 30.960, was proposed to limit the holding in *Davis.* Section 3 limited the liability to third parties of licensees and social hosts who serve underage patrons, by replacing the negligence *per se* rule of *Davis* with a reasonable person standard. Section 3 was approved without major revision.

> "A thorough reading of the minutes of the committee hearings on HB 3152 fails to reveal a single mention of creating a claim in favor of injured patrons. Throughout the hearings, discussion centered on licensees' liability to third parties. We believe that if the legislature had intended to create a new claim, not available under the common law, there would have been some mention of it in the committee hearings. This is especially true of a type of claim as controversial as this one."

*Sager v. McClenden, supra,* 296 Or at 37-39 (footnotes omitted). The opinion concludes: "In light of the legislative history, we * * * read ORS 30.950 as imposing a limitation on the liability originally created by judicial decision." *Id.* at 39-40.

Members of the 1979 legislature would be surprised to hear that in attempting to limit the liability of servers of alcoholic beverages to the standard stated in *Campbell,* they instead created licensee and permittee liability for all actions of an intoxicated customer upon satisfaction of the standard first stated in *Campbell, i.e.,* serving a visibly intoxicated person. Throughout the committee hearings, members assumed that the issue was the extent of licensee and permittee liability for injuries caused by intoxicated motorists under then existing caselaw and how such caselaw should be modified; at no time did anyone cite a fact pattern or example involving liability outside the context of automobile or traffic related injuries. *See* Minutes, House Committee on Judiciary (June 28, 1979, June 26, 1979, June 27, 1979); Minutes, Senate Committee on State and Federal Affairs and Rules (June 30, 1979). *Cf.* Minutes, Subcommittee 1 of the House Judiciary Committee 2 (May 14, 1987) (statement by lobbyist that the major reason the insurance industry considers risk unpredictable is because motor vehicle operators are often unable to cover their percentage of liability leaving insurance company with full burden of joint and several liability).[10]

---

[10] The 1987 legislation, *see* n 1, *supra,* continues the emphasis on motor vehicle accidents. Section 15 of Oregon Laws 1987, chapter 744 (codified at ORS 471.703), provides:

"(1) The police shall notify the Oregon Liquor Control Commission of the name of the alleged provider of alcoholic liquor when:

"(a) The police investigate *any motor vehicle accident where someone other than the operator is injured* or incurs property damage;

"(b) The operator appears to have consumed alcoholic liquor;

"(c) A citation is issued against the operator that is related to the consump-

The legislative history set forth in *Sager* establishes that although ORS 30.950 was proposed as a limitation on a tavern keeper's liability, it ended up (1) as a legislative codification of this court's decision in *Campbell v. Carpenter, supra,* and (2) as a legislative limitation of *Davis v. Billy's Con-Teena, Inc., supra. Sager* held that no statutory tort action in favor of intoxicated persons was created.[11]

*Sager* was decided in 1983. We cannot, however, overlook our later decision in *Chartrand v. Coos Bay Tavern, Inc., supra,* for it, too, involved ORS 30.950. As stated above, *Chartrand* was a negligence action brought by an injured motorist against a tavern owner who had served a visibly intoxicated patron who then left the tavern and drove her vehicle into a head-on collision with the plaintiff. We reversed a judgment in the plaintiff's favor because of an error in the instructions. In dictum, we stated that on remand, the plaintiff could proceed against the tavern owner on a statutory tort theory under ORS 30.950. *See* 298 Or at 695-97.

*Chartrand* lends some support to the plaintiff's assertion that ORS 30.950 created a statutory tort in his favor. *Chartrand* involved a claim for injuries arising from the very risk with which the legislature was concerned, the intoxicated

___

tion of alcoholic liquor or could have been issued if the operator had survived; and

"(d) The provider of alcoholic liquor is alleged to be a licensee or permittee of the commission.

"* * * * *

"(3) Upon receipt of the notice described in subsection (1) of this section, the commission shall cause the licensee or permittee named as the alleged provider to be notified of receipt of notice and of its content. A copy of the notice shall be retained in the files of the commission and shall be open to inspection *by the person injured or damaged by the motor vehicle operator* or a representative of that person.

"(4) The police shall notify the alleged social host when the circumstances described in subsection (1) of this section occur and the alleged social host is named as the provider of the alcoholic liquor. * * *" (Emphasis added.)

[11] Moreover, it is unusual to create a statutory tort with language that "no person is liable unless." *Cf. Wiener v. Gamma Phi, ATO Frat.,* 258 Or 632, 638, 485 P2d 18 (1971) ("We think that the design of ORS 471.410(2) [a statute that prohibited persons other than parents or guardians from providing alcoholic beverages to any person under the age of 21] was to protect minors from the vice of drinking alcoholic beverages; it was not the purpose of the statute to protect third persons from injury resulting from the conduct of inebriated minors * * *.")

driver.[12] *Sager* did not involve such a situation, and we refused to apply the statute. Nor do we in this case.

This plaintiff is not within the class of persons intended to be protected by the statute and the harm is not of a type intended to be protected against. The entire legislative history is in terms of the protection of persons injured by inebriated motorists. The legislature never had in mind the protection of persons in the plaintiff's position from the type of conduct or harm alleged in this case. We leave the plaintiff to his remedy in negligence.

We therefore disapprove the Court of Appeals' holding that the plaintiff's third amended complaint alleges a statutory tort under ORS 30.950. Even so, the case must be remanded to the trial court for further proceedings on the negligence claims.

The decision of the Court of Appeals reversing and remanding the case to the trial court is affirmed. The decision of the trial court dismissing the statutory tort claim is affirmed. The case is remanded to the trial court for further proceedings.

---

[12] Further, *Chartrand* involved a claim by a person who clearly was within the *Campbell v. Carpenter* protected class.

One writer criticizes *Chartrand* as follows:

"The finding of an implied statutory tort presented the court with the issue of whether this statutorily created tort action was intended to preempt the preexisting common law action. Yet, the court did not address this issue. The court also should have examined the wisdom of creating an additional statutorily influenced common law action, the prima facie evidence of negligence action, where two alternative tort actions were already available. This was an especially appropriate occasion for the court to consider whether to convert a negligence action into a prima facie evidence of negligence action.

"The court's addition of a prima facie evidence of negligence action to the existing implied statutory tort and negligence actions was even more difficult to justify in light of an earier decision. In *Stachniewicz v. Mar-Cam Corp.,* the court considered the same statutory language that was at issue in *Chartrand* and expressly held that it would not convert common law negligence into a more pro-plaintiff action. *Chartrand* did not mention, much less expressly overrule, this earlier holding. Therefore, even if the implied statutory tort action is ignored, the *Chartrand* court's assumption that a prima facie evidence of negligence action should lie is difficult to justify without the court providing some explanation for its decision. When the availability of the statutory tort action is factored in, the court's unanimous decision becomes a prime example of the typical knee-jerk reaction courts have when a focused statute is present: automatic conversion to either prima facie evidence of negligence or strict liability with defenses."

Forell, *supra*, 66 Or L Rev at 266-67 (footnotes omitted).