Argued May 9, affirmed July 20, 1977

CAMPBELL, *Respondent,*
*v.*
CARPENTER et ux, *Appellants,*
and
PIERCE, *Respondent.*

SCHEIE, *Respondent,*
*v.*
CARPENTER et ux, *Appellants,*
and
PIERCE, *Respondent.*
(TC 419-667 and 419-668, SC 24793 (consolidated))
566 P2d 893

Francis F. Yunker, Portland, argued the cause for appellants Carpenter. With him on the brief was Mary J. Vershum, Portland.

Elden M. Rosenthal, Portland, argued the cause for respondents Campbell and Scheie. With him on the brief was Charles Paulson, P.C., Portland.

No appearance for respondent Pierce.

Before Denecke, Chief Justice, and Tongue, Bryson and Tompkins, Justices.

TONGUE, J.

## TONGUE, J.

These are two consolidated actions for wrongful death against the owners and operators of a tavern. Both decedents were killed by an automobile whose driver had become intoxicated at the tavern. The cases were tried before the court, without a jury. Judgments were entered against both the driver, defendant Pierce, and against the owners of the tavern, defendants Carpenter. Only defendants Carpenter appeal.

The principal allegation of the complaint is that defendants Carpenter sold and continued to sell alcoholic beverages to defendant Pierce "after she had become perceptibly under the influence of intoxicating liquors" when they knew or should have known that she would "leave the premises" by "operating a motor vehicle and constitute an unreasonable hazard and risk of harm to other persons on the public highway." Defendants Carpenter do not contend that these allegations fail to state a cause of action, but contend that the evidence was insufficient to prove this allegation.[1]

Despite the fact that defendants do not challenge the sufficiency of the allegations of the complaint, it should be noted that this is the first case in Oregon in which this particular question has been presented. In *Wiener v. Gamma Phi, ATO Frat.,* 258 Or 632, 485 P2d 18 (1971), a case involving the serving of liquor to minors who were later involved in an automobile accident, we said (at 639):

> "* * * Ordinarily, a host who makes available intoxicating liquors to an adult guest is not liable for injuries to third persons resulting from the guest's intoxication. There might be circumstances in which the host would have a duty to deny his guest further access to alcohol. This would be the case where the host 'has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreason-

---

[1] The complaint also alleged that defendants Carpenter were negligent in permitting defendant Pierce to leave the premises when they knew that she would be driving.

able things.' *Such persons could include those already severely intoxicated,* or those whose behavior the host knows to be unusually affected by alcohol. * * *" (Emphasis added)

As authority for that statement we cited, among other authorities, *Rappaport v. Nichols,* 31 NJ 188, 156 A2d 1, 9, 75 ALR2d 821 (1959). That case involved facts more similar to those involved in this case. In affirming a judgment for the plaintiff, and on a theory of common law negligence, that court stated the following rules (at 8-9), which defendants Carpenter apparently do not question and which we approve:

"* * * Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. * * *

"The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another. See *Brody v. Albert Lifson & Sons,* 17 NJ 383, 389, 111 A2d 504 (1955). *Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated* or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. * * *

"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent. * * *

"The defendants contend that, assuming their conduct was unlawful and negligent as charged in the complaint, it was nevertheless not the proximate cause of the injuries suffered. But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a

[ 240 ]

substantial factor in bringing about the injuries. * * *"[2] (Emphasis added)

■ The question remains, however, to determine whether the evidence in this case was sufficient to satisfy the requirements as stated in *Rappaport.* As usual in an appeal from a judgment in favor of a plaintiff, we must view the evidence in the light most favorable to the plaintiff in the event of any conflicts in the evidence and also accord to the plaintiff the benefit of all reasonable inferences that the jury could have drawn from the evidence. *See Geer v. Farquhar,* 270 Or 642, 644, 528 P2d 1335 (1974).

In considering that question it is important to bear in mind that the question is not whether there was sufficient evidence from which the trial court could have properly found that Mrs. Pierce was "visibly" intoxicated at the time she left the tavern owned by defendants Carpenter, but whether there was substantial evidence from which the trial court, as the trier of the facts, could properly have found that at the time Mrs. Pierce was served the last (or any) drink prior to leaving the tavern she was "visibly" intoxicated.

[2]To the same effect, *see Waynick v. Chicago's Last Department Store,* 269 F2d 322 (7th Cir 1959); *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa 626, 198 A2d 550 (1964); *Vesely v. Sager,* 5 Cal 3d 153, 95 Cal Rptr 623, 486 P2d 151 (1971); *Mitchell v. Ketner,* 54 Tenn App 656, 393 SW2d 755 (1964), among other cases. *See also generally* Annot., 75 ALR2d 833 (1961).

It is also to be noted that in Oregon, as in New Jersey, state law prohibits the serving of intoxicating beverages to persons who are "visibly" or "apparently" intoxicated. *See* ORS 471.410(3) and ORS 472.310(3), and Oregon Liquor Control Regulations No. 10-065(2). *Cf.* RS 33:1-77, NJSA and Regulation No. 20, Rule 1, Division of Alcoholic Beverage Control, as discussed in *Rappaport v. Nichols,* 31 NJ 188, 156 A2d 1, 8, 75 ALR2d 821 (1959).

We also note that in *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 586-87, 488 P2d 436 (1971), we not only commented upon these statutes and regulations, but also commented upon the difficulty of determining whether a third party's injuries would have been caused by an already intoxicated person. Although we still consider that observation to have been appropriate under the quite different facts of that case, we accept and adopt the reasoning of the New Jersey court, as quoted above, as applied to cases involving facts such as those involved in this case. We do so not based upon or because of ORS 471.410(3), but as a matter of common law negligence, as did the New Jersey court.

There was testimony that Mrs. Pierce went to the tavern at about 4 p.m. and left about 6:30 p.m.; that during that interval she was served as many as eight beers; that before leaving the tavern she got into an argument with a man she met at the tavern, her ex-husband; that she was then asked by the bartender to leave and called the bartender a "bitch."

In addition, there was testimony that immediately upon leaving the tavern Mrs. Pierce drove her car in an exceedingly erratic manner, "screaming" up a street where children were playing, lurching around the next corner, "burning rubber" in doing so, swerving into the opposite lane of traffic so as to nearly hit oncoming cars head on; going through a "red light" at the next intersection, and then accelerating up a hill, passing four cars, at a speed of from 75 to 80 miles per hour, all immediately prior to the fatal accident in which the two decedents were killed.

Blood samples taken after the accident with the consent of Mrs. Pierce at 8:30 p.m., approximately two hours after leaving the tavern, showed a blood alcohol content of .24 percent. A professor of toxicology testified that, in his opinion, such a blood alcohol content at that time for a woman of her weight, would indicate that if she stopped drinking at 6 p.m. she would still probably be showing "outward symptoms of intoxication" at 6:50 p.m., the time of the accident, but that he "would not say" whether she would be showing such symptoms at 5:30 p.m. (an hour before she left the tavern, according to at least some witnesses).

■ He also testified, however, that even five and one-fourth beers would "build up" a blood alcohol level of .24 percent in a woman of her size and that at that level such a person would be "under the influence" and would probably show "outward symptoms" of intoxication. As previously noted, there was testimony from which the trial court could have found that the serving

of beer to Mrs. Pierce continued until she had up to eight beers in a period of approximately two hours.[3]

We believe that the trial court could have properly found from this evidence that defendants' bartenders had continued to serve beer to Mrs. Pierce after she was "visibly" intoxicated.

We also hold that the trial judge, as the finder of the facts in this case, could have properly found from this evidence that at the time of serving such drinks to Mrs. Pierce defendants Carpenter had reason to know that upon leaving the tavern she would probably drive away in her automobile. It is also our opinion that the trial judge, in making that finding, could properly take notice of the fact that "in current times * * * traveling by car to and from the tavern is so commonplace" (as also observed in *Rappaport v. Nichols, supra,* at 8) and that this includes visits to taverns by single women.

It is true that at some time after the drinks had been served to Mrs. Pierce, she left the tavern with her ex-husband. If a proper test of the negligence of a tavern keeper in such cases is that of negligence in allowing an intoxicated customer to drive an automobile upon leaving a tavern (as also alleged in plaintiffs' complaint), it might be contended that defendants Carpenter had no reason to know, at the time when Mrs. Pierce left the tavern, that she would try to drive her automobile because it was just as likely, if not more likely, that her ex-husband would be the driver.

■ Under the rule of *Rappaport,* however, which we now adopt for application in such cases, a tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is "visibly" intoxicated be-

---

[3]There was also some evidence that Mrs. Pierce took valium, a tranquilizer, while at the tavern. The trial court was not required to believe that evidence. There was also some testimony that after leaving the tavern Mrs. Pierce stopped elsewhere for another drink but that was contradicted by other witnesses.

cause at that time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile. As previously stated, we believe that there was sufficient evidence to support a finding in this case that at the time of serving the drinks to Mrs. Pierce, it was reasonably foreseeable to the defendants Carpenter that when she left the tavern she would be the driver of her own car, rather than that her estranged husband would be the driver.

Concluding, as we do, that there was substantial evidence to support the findings of fact by the trial court, its judgment in this case is affirmed.