Argued and submitted February 16, 1996, affirmed February 4, 1998

Gary FULMER
and Lottie Ann Fulmer,
*Appellants,*

*v.*

TIMBER INN RESTAURANT AND LOUNGE, INC.,
an Oregon corporation;
Gordon Joelson and M. Elaine Joelson,
*Respondents.*

(94 CV 1184; CA A88358)

954 P2d 201

Lawrence Baron argued the cause and filed the briefs for appellants.

Ronald B. Terzenbach argued the cause for respondents. With him on the briefs were Daniel M. Holland and Loomis & Holland.

Before De Muniz, Presiding Judge, and Landau and Armstrong, Judges.

LANDAU, J.

Armstrong, J., concurring in part; dissenting in part.

**LANDAU, J.**

Plaintiffs appeal a judgment dismissing their complaint for failure to state a claim. We affirm.

In reviewing the dismissal of the complaint for failure to state a claim, we accept as true all well-pleaded allegations of fact, as well as all reasonable inferences that may be drawn from them. *Huang v. Claussen*, 147 Or App 330, 332, 936 P2d 394, *rev den* 325 Or 438 (1997). In their second amended complaint, plaintiffs allege the following. Defendant Timber Inn Restaurant and Lounge, Inc.[1] operates the Timber Inn, a drinking and dining establishment. Plaintiff Gary Fulmer and his wife Lottie Ann Fulmer went to the Timber Inn "for the purpose of engaging in a social evening." Over the course of the evening, defendant served a substantial quantity of alcohol to Gary. At some point during that evening, Gary had consumed so much alcohol that he was visibly intoxicated. Defendant continued to serve Gary alcoholic beverages, which ultimately caused him "to become poisoned with alcohol, to lose his sense of reason and volition * * *." Plaintiff ultimately lost consciousness and fell down a flight of stairs, sustaining serious injuries. In addition to his injuries, Gary was diagnosed with acute alcohol intoxication.

Plaintiffs allege eight claims for relief. In the first three claims, they alleged that, by serving Gary while visibly intoxicated, defendant violated ORS 471.410(1), ORS 471.412(1), and ORS 472.310(3) (1991), which prohibit social hosts and licensees of the Oregon Liquor Control Commission (OLCC) from, among other things, serving or allowing to be served persons who are visibly intoxicated. Plaintiffs allege that, by violating those statutes, defendant was negligent *per*

---

[1] Also named as defendants in plaintiff's original and amended complaints were Gordon A. and M. Elaine Joelson, the owners, operators and officers of the corporation. The trial court dismissed those counts in the original complaint naming the Joelsons as individual defendants. Plaintiff subsequently amended the complaint, but did not make substantive changes to the counts against the Joelsons as individuals. When the Joelsons again moved to dismiss the claims against them, the trial court declared the motion moot. Plaintiff did not raise the status of the Joelsons as defendants in his initial brief to this court, and, therefore, we decline to address the issue. Our references to defendant in this opinion are to the corporation only.

*se.* In their fourth claim, plaintiffs allege that defendant violated ORS 471.425(2) and ORS 472.310(6) (1991), which generally require licensees of the OLCC to maintain an "orderly establishment." Once again, plaintiffs allege that, by violating those statutes, defendant was negligent *per se*. In their fifth claim, plaintiffs allege that defendant was negligent under the common law:

> "a. In serving, and continuing to serve, plaintiff Gary Fulmer a large amount of alcohol when it knew, or should have known, that plaintiff Gary Fulmer had lost his sense of reason and volition, and that further service of alcohol to plaintiff Gary Fulmer was likely to cause injury to him.
>
> "b. In failing to warn plaintiff Gary Fulmer about the danger of proceeding down the stairs in an unescorted or unassisted manner.
>
> "c. In hiring personnel that were neither trained nor qualified to spot and assist customers who were intoxicated to the extent plaintiff Gary Fulmer was, and who were likely to injure themselves.
>
> "d. In failing to assist plaintiff Gary Fulmer down the stairs.
>
> "e. In failing to have enough employees to monitor the amount of alcohol being served to plaintiff Gary Fulmer."

In their sixth claim—labeled "Assumption of Duty"—plaintiffs allege that "as a factual matter," defendant assumed a duty to "check" its customers and to protect them from injuring themselves as a consequence of consuming alcohol. Plaintiffs' seventh claim alleges that defendant was negligent in failing to provide premises that were reasonably safe for intoxicated patrons such as Gary. And in their final claim, plaintiffs seek damages on behalf of Lottie Ann for her loss of consortium with her husband Gary.

We begin with the viability of plaintiffs' first three claims for negligence *per se*. Plaintiffs contend that, because Gary belongs to the class of persons the cited statutes were intended to protect, defendant's alleged violation of those statutes is sufficient to state a claim for negligence *per se*. Defendant argues that the Supreme Court has held that a violation of ORS 471.410(1) does not establish liability under

a theory of negligence *per se* in favor of an injured intoxicated patron and that the other statutes—which are essentially identical—should be treated no differently. Plaintiffs acknowledge "that the Supreme Court has not permitted a theory of negligence per se to be based on ORS 471.410(1)," but they contend that the matter should be reconsidered.

ORS 471.410(1) provides, in part:

> "No person shall sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated."

ORS 471.412(1) provides:

> "No licensee or permittee shall knowingly allow a person to consume or to continue to consume alcoholic beverages on the licensed premises after observing that the person is visibly intoxicated."

ORS 472.310(3) (1991) (*repealed by* Or Laws 1995, ch 301, § 74), provided, in part:

> "It shall be unlawful * * * [f]or any person to serve, sell or dispense alcoholic liquor to any person * * * who is visibly intoxicated."

In *Hawkins v. Conklin*, 307 Or 262, 265, 768 P2d 66 (1988), the Supreme Court held categorically that "ORS 471.410(1) is not an appropriate standard for establishing negligence *per se*." The court's holding is not for us to reconsider. Moreover, because ORS 471.412(1) and ORS 472.310(3) (1991) are identical to ORS 471.410(1) in all respects relevant to this case, we decline to hold that those statutes are not subject to the same categorical holding. We conclude that the trial court did not err in dismissing plaintiffs' first three claims.

■ We turn to plaintiffs' fourth claim, based on ORS 471.425(2) and ORS 472.310(6) (1991). The former statute provides:

> "No licensee of the commission shall maintain a noisy, lewd, disorderly, or insanitary establishment or supply impure or otherwise deleterious alcoholic beverages."

ORS 471.425(6). The latter statute nearly identically provides:

"It shall be unlawful:

"* * * * *

"(6) For any licensee of the commission to maintain a noisy, lewd, disorderly or insanitary establishment or to supply impure or otherwise deleterious alcoholic beverages."

ORS 472.310(6) (1991). Plaintiffs argue that alleged violations of either statute should be sufficient to state a claim in negligence *per se*. Defendant argues that the statutes, like those on which plaintiffs rely in their first three claims, should not be held to provide a basis for claims of negligence *per se*, because they never were intended to protect intoxicated persons from harming themselves. In the alternative, defendant argues that plaintiffs have failed to allege facts from which it could be concluded that either statute was violated. Plaintiffs reply that by serving excessive quantities of alcohol to Gary and by failing to provide a safe means of egress for severely intoxicated persons such as Gary, defendant violated the statutes.

We do not address whether either statute may afford a basis for a negligence *per se* claim, because we agree with defendant that plaintiffs have failed to allege a violation of the statutes in their complaint. Plaintiffs do not allege any facts from which it reasonably could be concluded that defendant maintained a noisy, lewd, disorderly or insanitary establishment. We conclude that the trial court did not err in dismissing the fourth claim.

■ Plaintiffs' fifth claim contains allegations of common-law negligence. Plaintiffs acknowledge that intoxicated persons generally cannot maintain an action for negligence based on injuries they suffered while intoxicated. Citing *Ibach v. Jackson*, 148 Or 92, 35 P2d 672 (1934), however, they maintain that there is an exception to that general rule for injuries suffered as a result of an individual having been served intoxicating beverages *to the point of losing volition*. Defendant contends that *Ibach* either is distinguishable or is no longer good law.

At common law, the courts did not recognize a claim against a person furnishing alcohol in favor of anyone injured by the intoxicated patron or guest. *See Gattman v. Favro*, 306 Or 11, 17, 757 P2d 402 (1988). In *Campbell v. Carpenter*, 279 Or 237, 243-44, 566 P2d 893 (1977), the Oregon Supreme Court departed from the common-law rule and held that a tavern keeper may be held liable in negligence for serving drinks to a visibly intoxicated patron who leaves a tavern and later causes injury to a third person in an automobile accident. In *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), the court considered—and expressly rejected—expanding the scope of liability to the injured intoxicated patrons themselves. The court held categorically:

> "This court has never previously recognized a common law cause of action in favor of a person who suffers injury resulting from his or her own consumption of alcohol. Nor have most other courts."

*Id.* at 279; *see also Johnson v. Paige*, 47 Or App 1177, 1180, 615 P2d 1185 (1980) ("Oregon has never recognized" common-law negligence action for injuries resulting from an individual's own alcohol consumption) (citations omitted).

Meanwhile, in 1979, the Oregon legislature enacted the Liquor Liability Law, which provided that a private host is not liable for damages caused by an intoxicated guest unless the guest was served while visibly intoxicated. ORS 30.950 (1979). In *Sager v. McClenden*, 296 Or 33, 672 P2d 697 (1983), the court addressed whether the statute created liability in favor of an injured intoxicated patron or guest. The court held that, based on an analysis of the legislative history of the enactment, its purpose was to limit the scope of the liability created by the court's decision in *Campbell*. The court explained:

> "Section 1 of HB 3152, which, as modified, became ORS 30.950 [1979], was proposed to limit the holding in *Campbell*. As originally drafted, Section 1 provided that licensees would not be liable unless they were grossly negligent in serving visibly intoxicated patrons. The gross negligence standard, however, was deleted from the bill in committee. As finally approved, ORS 30.950 [1979] codified the holding in *Campbell*. * * *

"* * * * *

"A thorough reading of the minutes of the committee hearings on HB 3152 fails to reveal a single mention of creating a claim in favor of injured patrons. Throughout the hearings, discussion centered on licensees' liability to third parties. We believe that if the legislature had intended to create a new claim, not available under the common law, there would have been some mention of it in the committee hearings. This is especially true of a type of claim as controversial as this one.

"Further considerations also lead us to the conclusion that the legislature intended no new claim for patrons injured off the premises by their own intoxication. ORS 30.950 [1979] is written in a form which limits, not creates, liability. It reads: 'No licensee * * * is liable * * * *unless* * * *.' This language logically limits relief rather than expands it. * * * ORS 30.950 [1979] only provides the condition under which a commercial alcoholic beverage server becomes liable to one who already has a claim. In light of the legislative history, we * * * read ORS 30.950 [1979] as imposing a limitation on the liability originally created by judicial decision."

*Id.* at 38-40 (emphasis in original; citations omitted).

In 1987, the legislature substantially amended ORS 30.950, and it now provides:

"(1) No person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the Commission or social host is liable for damages incurred or caused by intoxicated patrons or guests off the premises of the licensee, permittee or social host unless:

"(a) The licensee, permittee or social host has served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(b) The plaintiff proves by clear and convincing evidence that the patron or guest was served alcoholic beverages while visibly intoxicated."

*See* Or Laws 1987, ch 774, § 13. We considered the effect of those amendments on the scope of an alcohol provider's liability at common law in *Plattner v. VIP's Industries, Inc.*, 95

Or App 351, 768 P2d 440, *rev den* 308 Or 79 (1989). We began our analysis by citing both *Miller* and *Sager* and observed:

> "Oregon has never recognized a common law claim against an alcohol provider in favor of a person who suffers injury from his or her own intoxication."

*Id.* at 353. We then noted that the legislative history of the original statute "indicates that its purpose is to confine the judicially created liability of alcohol servers to *third parties*." *Id.* at 354 (emphasis in original). With respect to the amendments, and their impact on common-law negligence claims, we then stated:

> "It is presumed that, in enacting subsequent legislation, the legislature was aware of the policy underlying earlier enactments. Had the legislature intended ORS 30.950 to permit actions by patrons, it could have expressly done so; instead, it chose to limit the liability of the server to third parties only. *We conclude that limitation applies to common law claims as well as to statutory claims.*"

*Id.* (emphasis supplied; citation omitted). We have adhered to that holding in every subsequent case in which the issue has arisen. *See, e.g., Smith v. Harms*, 125 Or App 494, 499, 865 P2d 486 (1993), *rev dismissed* 320 Or 268 (1994) ("The Supreme Court's holding in *Miller* denies a cause of action to one who illegally purchases alcohol and sustains injuries because of that purchase."); *Hunt v. Evenoff*, 112 Or App 630, 631, 829 P2d 1051, *rev den* 314 Or 175 (1992) (survivors cannot maintain wrongful death action on behalf of intoxicated patron against alcohol purveyors who served patron when he was visibly intoxicated, because the patron himself could not maintain the action). In light of the foregoing statutes and case law, it is clear that plaintiffs' common-law negligence claim for injuries that Gary sustained while he was intoxicated cannot be maintained.

*Ibach* does not require a contrary conclusion. First, the decision does not stand for the proposition for which plaintiffs cite it. In that case, the plaintiff estate alleged that the defendant served Genevieve Callahan sufficient alcohol that Callahan became ill and died. The complaint alleged that the defendant

"forced [Callahan] to partake of intoxicating liquors to such an extent that she lost her sense of reason and volition and forced her to continue to partake of said intoxicating liquors until she reached the state of acute intoxication, well knowing that she was unable to withstand the use of intoxicating liquors * * *."

*Id.* at 96. The Supreme Court reversed the dismissal of the claim, explaining that "it is wrongful for any person repeatedly and continuously to ply another person with intoxicating liquor until intoxication is produced." *Id.* at 102-03. In so doing, the court expressly relied on, and quoted from, a Texas opinion involving a plaintiff that had been "induced" to swallow three pints of whiskey in quick succession:

" 'And so if one whose mental faculties are suspended by intoxication is induced to swallow spirituous liquors to such excess as to endanger his life, the persons taking advantage of his condition of helplessness and mental darkness and imposing the drought upon him must answer in damages for the injury that ensues.' "

*Id.* at 104 (quoting *McCue v. Klein*, 60 Texas 168 (1883)). The court thus reasoned that a purveyor may be held liable for injuries to an intoxicated person if it has "induced" a plaintiff to drink dangerous quantities of alcohol and then "take[s] advantage" of the intoxicated condition and "impos[es]" on him or her additional drink.

This is not such a case. There is no allegation that defendant "induced" Gary to drink anything, much less that it took advantage of him in his intoxicated state and imposed additional quantities of alcohol on him. Thus, even under *Ibach*, plaintiffs' claim may not be maintained.

■ Second, and in any event, to the extent that the decision stands for the proposition of law for which plaintiffs cite it, *Ibach* is no longer good law. Both the legislature and the appellate courts of this state have held consistently for at least the last two decades that a claim for negligently serving a patron alcoholic beverages is limited to a single class of plaintiffs: Injured third parties. *Sager*, 296 Or at 39 (purveyor liability limited to injuries to third parties); *Plattner*, 95 Or App at 354 (liability of purveyors limited "to third parties only"). It bears emphasizing that the legislature and the

courts have not described who may *not* bring negligence claims against alcohol purveyors; instead they have described the limited universe of who *may* bring such claims, and that universe of potential plaintiffs consists of injured third parties only. Thus, whether a patron was merely visibly intoxicated or intoxicated to the point of losing volition, the fact remains that recovery in negligence for injuries arising out of the intoxication is limited to a class of individuals other than the patron. The trial court therefore did not err in dismissing plaintiffs' fifth claim.

■ Plaintiffs' sixth claim may be disposed of summarily. Plaintiffs allege that, "as a factual matter," defendant undertook a special duty to protect intoxicated patrons from injuring themselves and that it was negligent in violating that duty. Despite the allegation that the duty exists "as a factual matter," the complaint contains no allegations of fact from which such a duty might reasonably be inferred. The trial court did not err in dismissing the sixth claim.

■ Plaintiffs' seventh claim similarly may be disposed of quickly. Plaintiffs allege that defendant failed to make its premises reasonably safe for intoxicated persons. In *Johnson*, we confronted—and rejected—the same argument on substantially similar facts. In that case, the plaintiff alleged that the defendant failed to warn an invitee that certain stairs were unreasonably dangerous to intoxicated persons. We held the allegations insufficient to state a premises liability claim because there was no allegation "that the stairs were negligently maintained or could not be used safely by an ordinary person unaffected by intoxication." *Johnson*, 47 Or App at 1181-82. The same is true of plaintiffs' allegations in this case.

Plaintiffs' final claim is for loss of consortium. Plaintiffs concede that, to state a claim for loss of consortium, there must be at least one valid claim for tortious injury to the spouse of the complaining party. In light of our conclusions that plaintiffs have failed to state a claim for tortious injury to Gary, it necessarily follows that his wife has failed to state a claim for loss of consortium, and the trial court did not err in dismissing that claim.

Affirmed.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

I disagree with the majority's conclusion that an adult may never maintain a common-law negligence action for injuries that result from his or her own intoxication. While it is indeed true, as the majority asserts, that Oregon courts have yet to allow such an action, I am convinced that this happenstance is a survival of the long-since rejected regime under which a plaintiff's contributory negligence acted as an absolute bar to recovery. I am further convinced that, under Oregon's current comparative fault regime, there is no principled reason now to treat injuries caused by the consumption of alcohol differently from other negligence-caused injuries.

It is perhaps not surprising that none of the cases relied on by the majority has addressed the issues of contributory negligence and comparative fault. A closer examination of those cases reveals that each turned on the narrow interpretation of statutes adopted by the legislature both to protect and hold accountable commercial alcohol providers for injuries occurring *off* their premises. I have no quarrel with any of the earlier decisions by this court thus interpreting the various statutes adopted by the legislature in pursuit of those goals, and I agree with the majority that plaintiffs' statutory claims are all without merit. I take issue, however, with the majority's reliance on this court's flat assertion in *Plattner v. VIP's Industries, Inc.*, 95 Or App 351, 354, 768 P2d 440, *rev den* 308 Or 79 (1989), that those *statutory* rulings somehow limit common-law claims. That assertion in *Plattner* was made without any accompanying analytical support, and I suggest that it is time to recognize it as fallacious.

It is true that in *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), the leading case in the line relied on by the majority, the Supreme Court held, *inter alia*, that the plaintiff did not have a common-law claim against the liquor retailer who had sold her alcohol. *Id.* at 279. The court's reasoning was based *not* on the fact of the plaintiff's voluntary intoxication but, rather, on the fact that, because she was under age, she had committed an illegal act by purchasing and consuming the alcohol. *Id.* The court stated that it

"would be inconsistent with apparent legislative policy to reward the violator with a cause of action based upon his or her conduct which the legislature has chosen to prohibit and penalize." *Id*. I do not disagree with that facet of the court's reasoning in *Miller*, but I believe that that case and its progeny have been given far too much precedential value by this court. I further believe that neither *Miller* nor any of the other cases cited by the majority controls the outcome of this case.

*Miller* and the cases following it have been uniform in the assertion, repeated by the majority here, that Oregon has never recognized a common-law claim for an individual who suffers injuries as a result of his or her own intoxication. None of those cases, however, has identified any universal truth or logic to support that assertion. Outside a system in which contributory negligence would act as an absolute bar to recovery, the only possible explanation I can see for this blanket rule is an inherent prejudice against individuals who drink to the point of intoxication. But law should be based not on prejudice but on reason. An adult who has drunk to the point of intoxication has committed no illegal act in doing so, and I can see no reason why a court, under contemporary legal principles of comparative fault, should reject out of hand the claim of a person injured as a result of the volitional consumption of alcohol.

Moreover, plaintiffs in this case allege that Gary Fulmer's injuries were the result of *nonvolitional* conduct. The majority responds to that contention by ruling that the case on which plaintiffs rely, *Ibach v. Jackson*, 148 Or 92, 35 P2d 672 (1934), is no longer good law and that, even if it were good law, it would not support plaintiffs' claims. The majority first states that the relevant pleadings in *Ibach* alleged that the defendant had forced the plaintiff's decedent to drink alcohol. 152 Or App at 342-43. The majority then states that the pleadings in this case do not indicate that defendant " 'induced' Gary to drink anything, much less that it took advantage of him in his intoxicated state and imposed additional quantities of alcohol on him."[1] *Id*. at 343. I disagree

---

[1] The procedural posture of *Ibach* adds to the confusion regarding its analysis. The plaintiff filed a complaint in which she did not allege that the defendant had

with the majority on both points. First, plaintiffs allege in the pleadings that Gary Fulmer had become intoxicated to the point of losing all control of reason or volition. In other words, he was incapable of consenting to further service of alcohol. Defendant nevertheless continued to serve him. As part of its analysis, the court in *Ibach* stated:

> "Independently of any statute, it is wrongful for any person repeatedly and continuously to ply another person with intoxicating liquor until intoxication is produced. An action by a [person] so mistreated could be maintained unless by voluntary participation therein she could herself be said to be at fault. * * * [It] *may be inferred from the original complaint, that after decedent lost her sense of reason and volition, defendant continued to administer liquor to her. If decedent had survived such an indignity, she would have had a right of action against defendant for such damages as she sustained thereby.*"

*Id.* at 102-03 (emphasis supplied). The court went on to quote with approval the opinion of the Texas Supreme Court, in which Chief Justice Willie wrote:

> " '[T]he maxim of *volenti non fit injuria* presupposes that a party is capable of giving assent to his own injury. If he is divested of the power of refusal by reason of total or partial want of mental faculties, the damage cannot be excused on the ground of consent given. *A consent given by a person in such condition is equivalent to no consent at all — more especially when his state of mind is well known to the party doing him the injury.*' "

*Id.* at 103-04 (quoting *McCue v. Klein*, 60 Texas 168 (1883)) (emphasis supplied). As for the majority's assertion that *Ibach* has been overruled *sub silentio* by the later decisions on which the majority relies in its decision today, I repeat my contention that none of those rulings has offered a principled reason for denying a common-law claim to an adult injured as a result of his or her own intoxication where contributory negligence no longer operates as an absolute bar to recovery.

---

"forced" the decedent to drink. After the defendant filed a demurrer, the plaintiff filed an amended complaint in which the word "force" was used. On reconsideration, the court held that the *first* complaint, which did *not* discuss the use of force, was sufficient to state a claim. *Ibach*, 148 Or at 111-12.

Finally, because I believe that plaintiffs have alleged facts sufficient to state a common-law negligence claim by Gary, it follows that Lottie Ann has stated a claim for loss of consortium and that that claim must also be reinstated.

I respectfully dissent.