Filed: July 27, 2000

IN THE SUPREME COURT OF THE STATE OF OREGON

GARY FULMER
and LOTTIE ANN FULMER,
husband and wife,

 Petitioners on Review,

 v.

TIMBER INN RESTAURANT AND LOUNGE, INC.,
an Oregon corporation;
GORDON JOELSON, and M. ELAINE JOELSON,

 Respondents on Review.

(CC 94 CV 1184; CA A88358; SC S45323)

 En Banc

 On review from the Court of Appeals.*

 Argued and submitted May 11, 1999.

 Maureen Leonard, Portland, argued the cause for petitioners
on review. With her on the briefs was Lawrence Baron.

 Ronald B. Terzenbach, of Loomis & Holland, Eugene, argued
the cause for respondents on review. With him on the briefs was
Daniel M. Holland.

 Kevin N. Keaney, of Willner Keaney Mata & U'Ren, LLP,
Portland, and Meagan A. Flynn, of Pozzi Wilson Atchison, LLP,
Portland, filed briefs for amicus curiae Oregon Trial Lawyers
Association.

 Thomas W. Brown, of Cosgrave, Vergeer & Kester, LLP,
Portland, filed a brief for amicus curiae Oregon Association of
Defense Counsel.

 KULONGOSKI, J.

 The decision of the Court of Appeals is affirmed in part and
reversed in part. The judgment of the circuit court is affirmed
in part and reversed in part, and the case is remanded to the
circuit court for further proceedings.

* Appeal from Coos County Circuit Court, Michael J. Gillespie, Judge. 152 Or App 334, 954 P2d 201 (1998).

 KULONGOSKI, J.

 This is a civil proceeding in which plaintiffs seek
recovery from defendants for injuries that plaintiff (1) sustained in
a fall on defendants' premises after defendants allegedly served
alcohol to plaintiff while plaintiff was visibly intoxicated. 
Plaintiffs' second amended complaint (hereinafter complaint)
alleged eight claims for relief, including negligence per se,
common-law negligence, premises liability, and loss of
consortium. The trial court dismissed the complaint for failure
to state a claim. ORCP 21 A(8). Plaintiffs appealed, and the
Court of Appeals affirmed. Fulmer v. Timber Inn Restaurant and
Lounge, Inc., 152 Or App 334, 954 P2d 201 (1998). We allowed
plaintiffs' petition for review. We hold that plaintiffs'
complaint stated ultimate facts sufficient to constitute claims
for common-law negligence, premises liability, and loss of
consortium. Accordingly, we affirm in part and reverse in part.

 In reviewing a dismissal for failure to state a claim
under ORCP 21 A(8), we accept as true all well-pleaded
allegations of fact and all reasonable inferences that may be
drawn from them. Scovill v. City of Astoria, 324 Or 159, 164,
921 P2d 1312 (1996). We examine those facts to determine only
whether plaintiffs have alleged facts sufficient to constitute a
claim. Id. 

 Plaintiffs' complaint alleged the following: In
February 1993, plaintiffs went to the Timber Inn for a social
evening with their family. Defendant Timber Inn Restaurant and
Lounge, Inc., owns and operates that establishment. (2) Gordon A. and M. Elaine Joelson, the owners, operators, and officers of that corporation, also were named as defendents. The Timber Inn is a two-story restaurant and lounge. The only means of
access to the lounge, located on the second level, is by way of
stairs.

 During the evening, defendants served a substantial
quantity of alcohol to plaintiff. At some point, plaintiff
became visibly intoxicated, but defendants continued to serve him
alcohol, causing him "to become poisoned with alcohol, [and] to
lose his sense of reason and volition * * *." Ultimately,
plaintiff lost consciousness and fell down the stairs, sustaining
serious injuries. 

 Plaintiffs' first seven claims sought an award of
damages for the injuries that plaintiff suffered. The eighth
claim sought damages on behalf of Lottie Ann Fulmer for loss of
consortium. We begin with plaintiffs' first three claims, each
of which alleged negligence per se. 

Plaintiffs alleged that, by continuing to serve alcohol
to plaintiff after he was visibly intoxicated, defendants violated
ORS 471.410(1), (3) ORS 471.412(1), (4) and former ORS 472.310(3)
(1993). (5) All three statutes prohibit serving alcohol to persons
who are visibly intoxicated. Plaintiffs alleged that defendants'
violation of those statutes was negligence per se, i.e., that
defendants negligently failed to exercise the level of care
allegedly specified in those statutes.

 This court has held that ORS 471.410(1) does not create
a standard of care the violation of which would constitute
negligence per se. See Stachniewicz v. Mar-Cam Corporation, 259
Or 583, 586-87, 488 P2d 436 (1971), overruled in part on other
grounds by Davis v. Billy's Con-Teena, Inc., 284 Or 351, 356 n 4,
587 P2d 75 (1978) ("visible intoxication" standard under former
ORS 471.410(3) (1975), renumbered and amended as ORS 471.410(1)
(1977), is inappropriate in negligence per se context); Hawkins
v. Conklin, 307 Or 262, 265, 768 P2d 66 (1988) (same). 

 Plaintiffs acknowledge that the court held in
Stachniewicz that ORS 471.410(1) does not afford a basis for a
claim of negligence per se and further acknowledge that ORS
471.412(1) and former ORS 472.310(3) (1993) are identical to ORS
471.410(1) in all respects relevant to this case. Plaintiffs
contend, however, that the holding in Stachniewicz was incorrect
and should be overruled. Plaintiffs also assert that the court
should not extend that holding to the interpretation of ORS
471.412(1) and former ORS 472.310(3) (1993).

 In Hawkins, the Court of Appeals had determined,
contrary to Stachniewicz, that the plaintiff had stated a
negligence per se claim on the basis of ORS 471.410(1). Hawkins
v. Conklin, 87 Or App 392, 395, 742 P2d 672 (1987). This court
reversed, stating:

"This court has held that ORS 471.410(1) is not an
appropriate standard for establishing negligence per
se. Stachniewicz v. Mar-Cam Corporation, 259 Or 583,
586-87, 488 P2d 436 (1971), overruled in part on other
grounds Davis v. Billy's Con-Teena, Inc., 284 Or 351,
356 n 4, 587 P2d 75 (1978). Whether or not we would so
hold if the effect of ORS 471.410(1) were before us for
the first time today, we follow our practice of giving
a prior interpretation of a statute the effect of stare
decisis. We reverse the Court of Appeals' holding that
the plaintiff stated a claim of negligence per se based
on ORS 471.410."

Hawkins, 307 Or at 265. 

 At this point, plaintiffs' argument would require the
court not only to reverse the statutory construction adopted in
Stachniewicz, but also to abandon the decision in Hawkins to
accord the effect of stare decisis to the holding in
Stachniewicz. Plaintiffs submit nothing that would justify those
actions. Under the circumstances, we follow Hawkins. Thus, in
construing ORS 471.412(1) and former ORS 472.310(3) (1993), we
accord stare decisis effect to this court's construction in
Stachniewicz of the materially identical wording of ORS
471.410(1). Because none of those statutes afford a basis for a
claim of negligence per se, the trial court did not err in
dismissing plaintiffs' first three claims for relief. 

 Plaintiffs do not seek review of the dismissal of their
fourth claim for relief, which alleged negligence per se based on
violations of ORS 471.425(2) and former 472.310(6) (1993). 
Therefore, we proceed to consider plaintiffs' fifth claim for
relief, based on common-law negligence.

 Plaintiffs' fifth claim for relief alleged that
defendants were liable, under a common-law negligence theory, for
"causing plaintiff * * * to become poisoned with alcohol, to lose
his sense of reason and volition; and * * * knowing plaintiff * * * was in such condition and visibly intoxicated, continu[ing]
to ply plaintiff * * * with alcohol * * *." At issue is whether
a common-law negligence claim exists in favor of an intoxicated
person who suffered injury on the premises of an establishment
against the server or establishment that supplied alcohol to the
injured person when the person was visibly intoxicated. 
Defendants assert that Oregon does not recognize such a common-law claim in favor of a person who suffers injury resulting from
his or her own consumption of alcohol, citing Miller v. City of
Portland, 288 Or 271, 279, 604 P2d 1261 (1980), and Sager v.
McClenden, 296 Or 33, 35, 672 P2d 697 (1983). Plaintiffs respond
that defendants' assertion is incorrect, citing Ibach v. Jackson,
148 Or 92, 102-3, 35 P2d 672 (1934). As we explain below,
plaintiffs are correct.

 In Oregon, criminal penalties for the sale of alcohol
to intoxicated persons first were enacted in 1876. See Annotated
Laws of Oregon, v I, ch VIII, title II, § 1914, p 965 (Hill 1887)
("It shall be unlawful for any person to knowingly sell * * * any
spirituous or other intoxicating liquors * * * to any intoxicated
person, or to any person who is in the habit of becoming
intoxicated[.]"). Legislation passed in 1913, known as the Dram
Shop Act, created limited statutory civil liability for the same
acts. General Laws of Oregon, ch 51, § 1, pp 82-83 (1913); see,
e.g., Gattman v. Favro, 306 Or 11, 16-17, 757 P2d 402 (1988)
(discussing origins of statutory tort liability for service of
alcohol). Before 1934, neither an intoxicated first party nor a
third party injured as a result of an intoxicated person's
actions could bring a claim for common-law negligence against an
alcohol provider. Hawkins, 307 Or at 266. In 1934, however,
this court in Ibach departed from the historical rule disallowing
common-law claims against alcohol providers and recognized for
the first time a common-law claim in favor of an intoxicated
person on the theory that the defendant negligently had furnished
the person alcohol. Ibach, 148 Or at 102-3.

 Ibach was a wrongful death action premised on an
allegation that the defendant's negligent acts had caused the
death of Genevieve Callahan (Callahan). The plaintiff,
administratrix of Callahan's estate, filed a complaint alleging
that the defendant "wrongfully and unlawfully gave and served * * * Callahan large quantities of intoxicating alcoholic liquors
for beverage purposes, and induced her * * * to drink the same in
large quantities * * *," thereby causing her to become ill and
die. Id. at 94-95. 

 Subsequently, the plaintiff filed an amended complaint
that repeated the allegations contained in the original complaint
and further alleged that the defendant had "wrongfully forced"
Callahan to consume alcoholic liquors "to such an extent that she
lost her sense of reason and volition * * *" and that the
defendant had left Callahan alone in a hotel room after she had
become ill and had injured herself. Id. at 96-97. The defendant
filed a motion to strike the amended complaint, which the trial
court granted. The trial court then entered judgment in favor of
the defendant and dismissed the case. 

 On the plaintiff's appeal, this court held, among other
things, that the trial court had erred in sustaining the
defendant's motion to strike the amended complaint. Id. at 100. 
The court reasoned:

"[I]t is wrongful for any person repeatedly and
continuously to ply another person with intoxicating
liquor until intoxication is produced. * * * It is
alleged in the amended complaint, as it may be
inferred from the original complaint, that after
[Callahan] lost her sense of reason and volition,
defendant continued to administer liquor to her. If
[Callahan] had survived such an indignity, she would
have had a right of action against defendant for such
damages as she sustained thereby."

Id. at 102-3 (emphasis added).

 Thus, in Ibach, this court recognized the claim that
plaintiffs bring in this case, namely, a common-law claim in
favor of an intoxicated person on the theory that the defendant
negligently had served alcohol to the person. Defendants'
argument that there is no prior case law holding that a common-law negligence claim exists in favor of an intoxicated person
under such circumstances is incorrect. 

 Defendants assert, in the alternative, that Ibach is
inapplicable to this case, because in Ibach Callahan allegedly
was "forced" to consume alcohol, whereas plaintiff in this case
"voluntarily" participated in his alcohol consumption. That
distinction does not provide support for defendants' position. 
In Ibach, on the defendant's petition for rehearing, this court
clarified that the allegation in the amended complaint concerning
the use of force by the defendant in that case was immaterial:

 "Whether constructive force or actual force, or no
force at all was employed, the violation of duty is
shown by the facts alleged[.]"

Id. at 111. Similarly, the lack of forcible conduct on
defendants' part in this case does not determine whether
plaintiff has alleged facts sufficient to state a claim for
negligence.

 Defendants also contend, based on their reading of
several cases later from this court, that it would be
"inconsistent with legislative policy" to "create" a liquor
liability claim based on a theory of common-law negligence in
favor of an intoxicated person. We reiterate that this court
already has recognized such a claim in Ibach. In addition, for
the reasons that follow, we do not agree that the cases defendants
rely on support a contrary holding.

 Defendants rely, in part, on the following statement
that this court made in Miller, 288 Or at 279: 

 "This court has never previously recognized a
common-law cause of action in favor of a person who
suffers injury resulting from his or her own
consumption of alcohol." 

Miller was a third-party action brought by the City of Portland
and one of its police officers (collectively the City) against
the operators of a tavern. Miller had sued the City as a result
of personal injuries that she and her companion, Kolibaba, had
sustained as a result of a traffic accident involving a police
car and Kolibaba's motorcycle, on which Miller was a passenger. 
Both Miller and Kolibaba were minors, and the complaint alleged
that both were "visibly intoxicated" when the tavern operators
provided them with alcohol. The City settled Miller's claims and
sought contribution from the tavern operators, the third party
defendants. Id. at 273. 

 One of the allegations in the City's complaint was a
first-party negligence claim, (6) like plaintiffs' claim in this
case, that alleged that the tavern owners were liable to Miller
because they negligently had served alcohol to Miller while she
was visibly intoxicated. Id. at 274. In its decision, the court
did not cite Ibach and refused to "create" such a common-law
claim, relying solely on the Oregon Dram Shop Act as a basis for
that refusal. Id. at 280, citing former ORS 30.730 (1977). (7) 
That act provided for a cause of action brought by the "wife,
husband, parent or child" of an intoxicated patron, but did not
provide for an action by a person injured as a result of his or
her own intoxication. Based on the wording of former ORS 30.730
(1977), the Miller court reasoned:

"When the legislature has considered the liability to
the inebriate's immediate family which should result
from the giving of alcoholic liquor to him but has
refrained from giving him a cause of action, we
conclude it is probable [that the legislature] must
have considered the matter and rejected any cause of
action for him. We, therefore, consider a cause of
action for his benefit inappropriate."

Id. (footnote omitted). 

 Notably, Miller was not the only case in which the
court has considered whether the Dram Shop Act contained the
exclusive list of those people who could maintain a negligence
action against a supplier of liquor. In Wiener v. Gamma Phi, ATO
Frat., 258 Or 632, 638-39 n 2, 485 P2d 18 (1971), the court
specifically rejected that proposition and permitted a third-party negligence claim against a social host to proceed to trial. 
The court in Wiener reasoned that the legislature did not intend
for the Dram Shop Act to be the sole civil remedy against persons
who furnish alcohol to others, because the Act provided a remedy
for such a limited class of plaintiffs. Id. Both Ibach and
Wiener predated Miller. Both established that the court's view
in Miller of the scope of the Dram Shop Act was incorrect. 

 The court in Miller, although it never discussed
Ibach, (8) acknowledged the footnote in Wiener and reasoned as
follows:

 "In Wiener * * * we said the dram shop statute did
not prescribe the sole civil remedy against persons who
furnish liquor to others because it provided a remedy
for a very limited class of plaintiffs. We agree with
this statement as it applied to the facts of that case
in which the plaintiff was an unrelated third party who
was injured by the intoxicated person. We do not
believe the statement is applicable in a situation in
which the intoxicated person himself is the claimant
because of his close relationship to the named class. 
It would have been the natural thing to include him as
a beneficiary of the statute with the rest of his
immediate family had the legislature desired to do so."

Miller, 288 Or at 280 n 13.

 The footnote in Miller proposes that, if the
legislature had intended to permit an intoxicated person to
recover damages in a first-party claim (as in this case), then
the legislature would have included the intoxicated person as a
beneficiary under the Dram Shop Act with the rest of his or her
immediate family. That proposition is not historically accurate,
however. In 1913, when the legislature enacted the Dram Shop
Act, no person in the intoxicated person's position could have
recovered in a negligence action, because such a claim would have
been defeated by the (then) well-recognized doctrines of
contributory negligence and assumption of the risk. Contrary to
the footnote in the Miller opinion, and given the persuasive
status of those doctrines when the legislature enacted the Dram
Shop Act, it would have been contradictory for the legislature to
include a person who voluntarily consumes alcohol -- thus
excluding the intoxicated person from those doctrines. It is not
the exclusion of the intoxicated person that is remarkable;
inclusion would have been remarkable. It follows from the
foregoing that the narrow reading of the Dram Shop Act in Miller
was mistaken. 

 Although we recognize that Miller and Ibach reached
different results with regard to first-party negligence claims,
Miller did not overrule Ibach expressly. Moreover, for three
reasons, we conclude that Miller did not overrule Ibach sub
silentio. We acknowledge, at the outset, that the court in
Miller went further than simply failing to mention Ibach -- it
affirmatively asserted that this court never had recognized a
first-party claim in these circumstances -- an assertion that
patently was inaccurate. Second, not only was Miller incorrect
in its characterization of the state of the law, the court based
its entire analysis concerning the plaintiff's first-party
negligence claim on that faulty premise. Third, and finally, we
note that the court in Miller predicated its refusal to "create * * * a common law cause of action for the benefit of the
intoxicated person" solely on its mistakenly narrow reading of
the Dram Shop Act. Although the legislature may abrogate rules
of the common law by statute, the Ibach court's recognition of a
common-law negligence claim on behalf of a first-party plaintiff
occurred after the enactment of the Dram Shop Act relied on in
Miller. (9) Accordingly, absent legislative or judicial abrogation,
the common-law rule established in Ibach was in effect when this
court decided Miller. See State v. Black, 193 Or 295, 301, 236
P2d 326 (1951) (rules of common law that have not been modified
or abrogated are binding on courts). However, for reasons that
are not clear from the text of that decision, the Miller court
neither acknowledged nor discussed Ibach and, instead, chose to
analyze the City's common-law negligence exposure under the Dram
Shop Act, in effect stating that "our hands are tied." 

 This court ordinarily considers itself bound by a
previous holding of this court regarding the content of the
common law. But it does not consider itself to be bound by an
inaccurate statement of that law. Defendants do not separately
advance any principled argument to show that Ibach -- as opposed
to Miller -- was wrong when decided. See G.L. v. Kaiser
Foundation Hospitals, Inc., 306 Or 54, 59, 757 P2d 1347 (1988)
(court may reconsider court-created common-law rule when earlier
case was "wrong when it was decided"). That is not an inquiry
that we deem appropriate to make on our own. Accordingly, we
conclude that Ibach remains an accurate statement of the common-law rule in Oregon. 

 Sager is the second case that defendants rely on for
the proposition that it would be inconsistent with legislative
policy to "recognize" an intoxicated patron's common-law claim in
negligence for damages resulting from the patron's own
intoxication. Relying on Miller, the court in Sager repeated the
inaccurate assertion made in Miller, stating: "Oregon never has
recognized a common law claim against alcohol providers in favor
of a person who suffers injury resulting from his or her own
intoxication." Sager, 296 Or at 35.

 Apart from its inaccuracy, that comment was dictum. 
The sole issue in Sager was whether ORS 30.950 (1983) created a
claim in favor of an intoxicated person against a liquor licensee
for off-premises injuries. (10) Id. at 35. Sager held that alcohol
providers were liable under ORS 30.950 (1983) only for injuries
suffered off premises by third parties. Id. at 40. That holding
has no bearing on this case -- plaintiffs in this case do not
allege a claim under ORS 30.950. See, e.g., Chartrand v. Coos
Bay Tavern, 298 Or 689, 695-96, 696 P2d 513 (1985) (recognizing
third party's statutory liability claim under ORS 30.950 and
common-law negligence claim as separate and distinct theories of
liability). Furthermore, plaintiff suffered his injuries on
defendants' premises. Consequently, like Miller, Sager provides
no support for defendants. 

 Defendants also argue against the "creation" of a claim
on behalf of an intoxicated patron, because "[r]esponsibility for
injuries incurred by the intoxicated person [should] remain[]
with the person whose voluntary act resulted in the injury." 
Defendants recognize that the legislature has abolished both
contributory negligence and implied assumption of the risk as
defenses and has replaced them with comparative fault. See ORS
18.470 (abolishing contributory negligence standard and replacing
it with comparative fault system); ORS 18.475 (abolishing
doctrine of implied assumption of the risk). Nevertheless,
defendants argue that comparative negligence principles should
not apply in a case brought as a first-party action by an
intoxicated person. Instead, defendants in effect ask us to rule
that plaintiff's "participation" in the "condition" that led to
his injuries should lead to the dismissal of a common-law claim
in his favor -- a ruling that would revive by court decision the
doctrines of contributory fault and assumption of the risk that
the legislature has abolished.

 In Grady v. Cedar Side Inn, Inc., 330 Or 42, 997 P2d
197 (2000), this court held that a third-party plaintiff who
allegedly had participated in the intoxication of the driver of a
car in which the plaintiff was injured was not barred by that
participation from bringing a common-law negligence claim against
the alcohol provider who allegedly had served the driver while
the driver was visibly intoxicated. The court stated: 

"Any complicity on the part of [the] plaintiff in [his
driver's] intoxication and any consequent apportionment
of fault attributable to plaintiff for his own injuries
are issues to be addressed by the trier of fact under
Oregon's comparative fault regime."

Id. at 50. 

 Those same principles apply in this case. Under
Oregon's comparative fault regime, a comparison of the relative
fault of defendant-alcohol server and plaintiff-alcohol consumer
is a matter for the trier of fact to weigh in its apportionment
of responsibility for plaintiff's injuries. If this court were
to hold that a plaintiff's consumption of alcoholic beverages
constitutes negligence that bars a claim for injuries suffered as
a result of the plaintiff's own intoxication, that would revive
the concept of contributory negligence in those circumstances. 
The legislature, however, has made a contrary choice in the
comparative fault statute, and we are bound by it. Similarly,
any decision by this court declaring that the consumption of
alcoholic beverages is a form of implied assumption of the risk
that bars a claim by a plaintiff for injuries suffered as a
result of his or her own intoxication would revive a defense
which also has been abolished. We decline defendants' invitation
to undermine the legislature's policy choices in this area. 

 Our decision today does not relieve intoxicated patrons
of their own responsibility to act reasonably to take care of
themselves. Under the comparative fault statute, a properly-instructed jury may reduce significantly or negate any recovery
when the plaintiff's own unreasonable conduct has contributed to
the plaintiff's injuries. As this court stated in Dahl v. BMW,
304 Or 558, 566, 748 P2d 77 (1987):

 "The test of reasonableness is properly left for
the factfinder, because it usually involves an
assessment of all the facts leading up to the injury
and a determination which factors played some role in
causing the injuries suffered by a plaintiff. Whether
the plaintiff, as an individual, acted reasonably[,] * * * whether this action contributed to the
plaintiff's injuries, and what portion of plaintiff's
injuries were caused by [the plaintiff's conduct] are
factual questions, better answered by the trier of fact
after hearing the evidence than decided as a matter of
law by a judge prior to trial."

 We hold that a plaintiff may bring a common-law
negligence action against a person or entity that negligently
supplied alcohol to the plaintiff when he or she already was
visibly intoxicated and the plaintiff suffered injuries caused by
that negligent conduct. Plaintiffs' fifth claim for relief
alleges that defendants are liable, under a theory of common-law
negligence, for continuing to serve alcohol to plaintiff after he
was visibly intoxicated "when it knew, or should have known * * *
that further service of alcohol to plaintiff * * * was likely to
cause injury to him." In Campbell v. Carpenter, 279 Or 237, 243-44, 566 P2d 893 (1977), this court recognized a common-law
negligence claim against a tavern keeper who serves a visibly
intoxicated patron who then causes injury to a third person in an
automobile accident. The court in Campbell quoted with approval
from Rappaport v. Nichols, 31 NJ 188, 156 A2d 1, 9, 75 ALR2d 821
(1959), a New Jersey case, which stated:

 "When alcoholic beverages are sold by a tavern
keeper * * * to an intoxicated person, the unreasonable
risk of harm * * * to * * * the intoxicated person * * * may readily be recognized and foreseen[.]"

Campbell, 279 Or at 240. Plaintiffs have alleged those necessary
facts in this case. Consequently, we hold that the trial court
erred in dismissing plaintiffs' fifth claim for relief.

 Plaintiffs do not seek review of the dismissal of their
sixth claim for relief, which alleged that defendants undertook a
special duty to protect intoxicated patrons from injuring
themselves and that it was negligent in violating that duty. 
Therefore, we proceed to consider plaintiffs' seventh claim for
relief, which is based on a theory of premises liability.

 Plaintiffs' seventh claim for relief alleges that
defendants are liable for failing to make their premises reasonably
safe for plaintiff, an invitee, in one or more of the following
ways:

 "a. In providing a lengthy set of stairs as the
only means of egress for plaintiff * * *.

 "b. In failing to provide an elevator as an
alternative to the stairs for descending from the
second level.

 "c. In failing to warn plaintiff * * * of the
dangers inherent in walking down the steps while in an
intoxicated condition.

 "d. In failing to carpet the landing at the
bottom of the stairs.

 "e. In having a vending machine on the landing at
the bottom of the stairs."

 Under Oregon law, a property owner must make its
property reasonably safe for an invitee's visit, exercise
reasonable care to discover risks, and eliminate those risks or
warn the invitee about those risks, to enable the invitee to
avoid the harm. Woolston v. Wells, 297 Or 548, 557-58, 687 P2d
144 (1984). Furthermore, it is well established in Oregon that a
proprietor's obligation to make its premises reasonably safe for
its invitees includes taking into account the use to which the
premises are put. See, e.g., Ragnone v. Portland School Dist.
No. 1J, 291 Or 617, 621 n 3, 633 P2d 1287 (1981) (so stating);
Mickel v. Haines Enterprises, Inc., 240 Or 369, 371-72, 400 P2d
518 (1965) (landowner must "take reasonable precautions to
protect the invitee from dangers which are foreseeable from the
arrangement or use of the premises.").

 Because one of the primary purposes of defendants'
invitation to their tavern is the consumption of alcohol by
customers, defendants were obligated to make their premises
reasonably safe in light of that purpose. Plaintiffs have
alleged that defendants failed to do so. As part of their
allegation that defendants failed to make their premises reasonably
safe, plaintiffs alleged that defendants knew "the use the
premises would be put to [sic] -- i.e., a lounge in which large
amounts of alcohol would be served -- and [knew] that intoxicated
patrons would have to use a lengthy set of steps to descend from
the lounge, and further [knew], or should have known, that such
use of the steps by intoxicated patrons would be likely to cause
injury to the patron." In other words, plaintiffs have alleged
that defendants failed to take reasonable precautions to protect
their invitees from dangers that they could foresee from the use of
their premises. Those allegations state a valid premises liability
claim. 

 We note that the degree to which plaintiff's
intoxication contributed to his injuries has no bearing on
whether plaintiffs' complaint sufficiently stated a claim for
premises liability. As with plaintiffs' common-law negligence
claim, a comparison of the relative fault of defendant-tavern
owner and plaintiff-invitee is a matter for the trier of fact to
weigh in its apportionment of responsibility for plaintiff's
injuries. See, e.g., Woolston, 297 Or at 556 (error to instruct
jury that defendant is liable only if reasonable person entering
defendant's land would not realize danger or would protect
himself against it; such an instruction frustrates purpose of
comparative fault). 

 We conclude, in light of the foregoing discussion, that
plaintiffs have alleged facts sufficient to constitute a claim
for premises liability. Accordingly, we hold that the trial
court erred in dismissing plaintiffs' seventh claim for relief. 

 Finally, plaintiffs' eighth claim for relief is for
damages stemming from plaintiff Lottie Ann Fulmer's loss of
consortium. The Court of Appeals reasoned that, because the
trial court properly had dismissed plaintiffs' seven other claims
for relief, "it necessarily follows that [Lottie Ann] has failed
to state a claim for loss of consortium * * *." Fulmer, 152 Or
App at 344. Because we hold that plaintiffs' complaint states
valid claims for negligence (fifth claim for relief) and for
premises liability (seventh claim for relief), we conclude that
that ground for dismissal of plaintiffs' loss of consortium claim
does not apply. We know of no other ground that would justify
dismissal of that claim. Consequently, we conclude that
plaintiffs have alleged facts sufficient to state a claim for
loss of consortium and, therefore, that the trial court erred in
dismissing plaintiffs' eighth claim for relief.

 In summary, we hold that the facts alleged in
plaintiffs' complaint support claims for negligence and for
premises liability (counts five and seven), and a valid claim by
Lottie Ann Fulmer for loss of consortium (count eight). We
therefore reverse that part of the trial court's judgment
dismissing those claims. As to plaintiffs' remaining claims, we
affirm the trial court's judgment. 

 The decision of the Court of Appeals is affirmed in
part and reversed in part. The judgment of the circuit court is
affirmed in part and reversed in part, and the case is remanded
to the circuit court for further proceedings.

1. Except when noted, all references to "plaintiff" are to
Gary Fulmer. All references to "plaintiffs" are to Gary and
Lottie Ann Fulmer.

Return to previous location.

2. All references to defendants are to the corporation and to the Joelsons, collectively.

Return to previous location.

3. ORS 471.410(1) provides:

 "No person shall sell, give or otherwise make
available any alcoholic liquor to any person who is
visibly intoxicated."

Return to previous location.

4. ORS 471.412(1) provides:

 "No licensee or permittee shall knowingly allow a
person to consume or to continue to consume alcoholic
beverages on the licensed premises after observing that
the person is visibly intoxicated." 

Return to previous location.

5. Former ORS 472.310 (1993) provided, in part:

 "It shall be unlawful:

 "* * * * *

 "(3) For any person to serve, sell or dispense
alcoholic liquor to any person * * * who is visibly
intoxicated. However, nothing in this subsection
prohibits any licensee from allowing a person who is
visibly intoxicated from remaining on the licensed
premises so long as the person is not sold or served
any alcoholic liquor."

The legislature repealed ORS 472.310 in 1995. Or Laws 1995, ch
301, § 74.

Return to previous location.

6. The City was subrogated in favor of Miller, with whom
it had settled. The tavern owners were liable to the City only
if they would have been liable to Miller had she brought an
action against them. Id. at 274.

Return to previous location.

7. The legislature repealed former ORS 30.730 (1977) in
1979, replacing it with ORS 30.950. Or Laws 1979, ch 801, § 4.

Return to previous location.

8. For reasons that we cannot understand, the case was not
cited to the Miller court by any of the parties.

Return to previous location.

9. As noted, Oregon enacted its original Dram Shop Act in
1913. General Laws of Oregon, ch 51, § 1, pp 82-83 (1913). The
original statutory wording survived almost unchanged until 1979,
when the legislature repealed the Dram Shop Act, replacing it
with ORS 30.950. Or Laws 1979, ch 801, § 4. Although the Dram
Shop Act existed at the time Ibach was decided in 1934, the court
in Ibach expressly rejected the defendant's contention that the
plaintiff's complaint was based on that act. Ibach, 148 Or at
99. 

Return to previous location.

10. ORS 30.950 (1983) provided:

 "No licensee or permittee is liable for damages
incurred or caused by intoxicated patrons off the
licensee's or permittee's business premises unless the
licensee or permittee served or provided the patron
alcoholic beverages when such patron was visibly
intoxicated."

Return to previous location.